ROGERS *vs.* RAWLINGS et al.

1. By the terms of the act of Congress of the tenth of May, eighteen hundred, a forfeiture did not accrue *immediately* on the failure of a purchaser of lands, to pay within the period of time, for which a delay of payment was given.   The lands did not revert, until after they were *again* offered for sale in the manner specified in the act.

2. The act of Congress of the second of March, eighteen hundred and twenty-one, was a proposal to extend the term of payment many years, and required of the party accepting of the extension, to make a written declaration of his assent to the provisions of the act : one of which declared, that the land on which the further credit was taken, should be *ipso facto* forfeited to the United States, if the payments were not made within three months after the day appointed for the payment of the last instalment,—which became due on the thirtieth of September, eighteen hundred and twenty-eight.

3. The act of Assembly of this State, of the fourteenth of June, eighteen hundred and twenty-one, invested the executor or administrator of the decedent, with authority to claim the benefits of the act of Congress, on behalf of the estates they represented.

4. All the acts of Congress for the relief of the purchasers of public lands, expired on the fourth of July, eighteen hundred and twenty-nine; and all lands sold on credit, and not paid for on the fourth of October, eighteen hundred and twenty-nine, on that day, reverted to the United States: and every interest of a purchaser, or derived from him, was at an end.

5. A forfeiture under this and similar acts, requires no act of entry on the part of the United States, to make it complete and effectual.

6. The acts of Congress of eighteen hundred and thirty, and eighteen hundred and thirty-one, do not revive the estates of purchasers, previously forfeited to the United States.

7. The act of the thirty-first of March, eighteen hundred and thirty, gives a right of pre-emption of lands forfeited, to the purchasers, until the fourth of July, eighteen hundred and thirty-one, upon their paying the minimum price per acre, in addition to the amount theretofore paid thereon and forfeited; *provided* the price, including what had been paid, and the amount to be paid, should exceed three dollars and fifty cents per acre.

8. And where one had paid more than three dollars and fifty cents per acre, when the purchase was made, his heirs and assigns became entitled to a patent without paying any more money.

9. The act of the twenty-fifth of February, eighteen hundred and thirty-one, extended a similar benefit to the purchasers, their heirs or assigns, of all the forfeited lands which originally sold for less than fourteen dollars; if one dollar and twenty-five cents per acre had been, or should thereafter be paid.

10. But the creditor of a purchaser, has no legal or equitable right, to insist on the gratuity bestowed in the act.

11. A widow is not entitled to dower, of lands once purchased of the United States, but which have been subsequently forfeited.

Error to the Circuit court of Madison.

Petition for dower, tried before *Lane,* J.

The plaintiff instituted proceedings in the Circuit court of Madison county, praying that dower might be allotted to her in two quarter sections of land described in the petition. The court below dismissed the petition, on the ground, that the husband of the plaintiff, in his life time, was not seized of such an estate as to vest in his widow a right of dower, and this judgment was removed to this court by writ of error.

The title to each quarter section was similar, and may be thus stated. In February, eighteen hundred and

Rogers *vs*. Rawlings et at.

eighteen, one Samuel Dickson, purchased the lands from the United States, paid one fourth part of the purchase money, and received a credit for the other three fourths, under the then existing laws. Certificates of the purchase were issued to him in the usual form, which he transferred by endorsement, to William A. Rogers, the husband of the plantiff. Rogers died in the year eighteen hundred and twenty, then being in possession of the lands, and holding the certificates of purchase issued to Dickson. One Weeden administered on his estate, and as administrator, claimed for the estate of his intestate, the benefit of the further credit allowed by the act of Congress of the second of March, eighteen hundred and twenty-one, under the provisions of which, he surrendered the certificates of purchase issued to Dickson, and received from the proper officer, others of further credit, which he afterwards sold and transferred to one Amos Johnson, under an authority supposed to be given by a private act of the legislature of this State. After several intermediate assignments, these certificates came to the possession of the defendant Rawlings in October, eighteen hundred and twenty-eight, who afterwards obtained patents, which were issued in his name, as the assignee of Dickson. No payment, was ever made on the lands, except the one fourth paid by Dickson, at the time of the purchase, and Rawlings became entitled to patents, under acts of Congress of the thirty-first of March, eighteen hundred and thirty, and the twenty-fifth of February, eighteen hundred and thirty-one.

The counsel for the plaintiff insisted—

1. That the estate vested in Rogers, was of such a nature as to entitle his widow to dower.

Rogers *vs.* Rawlings et al.

2. That her title was not divested by the sale of the lands made by Weeden, under the private act of the legislature. And

3. That notwithstanding the forfeiture of the lands, because of the non payment of the purchase money, and their consequent reversion to the United States, she was re-vested with her original title and estate, by virtue of the acts of Congress of eighteen hundred and thirty, and eighteen hundred and thirty-one, and thus became entitled to demand dower in the lands sued for.

*Robinson*, for the plaintiff in error.
*Hopkins*, contra.

GOLDTHWAITE, J.—It will not be necessary, in this case, to examine the first two positions assumed, as the conclusion to which we have arrived on the third, is in our opinion decisive of the claim.

The act of Congress of the tenth of May, eighteen hundred, prescribing the terms and conditions on which the sales of the public lands of the United States should be made, was in force at the time of the purchase made by Dickson, and these lands were consequently within its provisions, as they were but partially paid for. By the terms of this act, a forfeiture did not accrue immediately on the failure to pay within the period of time for which a delay of payment was given. The lands did not absolutely revert to the United States, until after having been offered for sale in a particular manner specified by the act. I am not aware that any effort was ever made to forfeit any lands under the provisions of the act of

eighteen hundred, and perhaps it was never contempla-
ted that the provisions of this act could be changed, so as
to affect a purchaser without his assent to the modifica-
tion of his contract. Be this as it may, it cannot be
doubted that the contract could be modified with the as-
sent of the purchaser or his legal representatives. The
act of the second of March, eighteen hundred and twen-
ty-one, was a proposal on the part of the United States,
to extend the term of payment for many years, and re-
quired of the party accepting this extension, to sign a
declaration in writing, of his assent to the provisions of
this act, one of which declared the land on which the
further credit is taken, shall be *ipso facto* forfeited to the
United States, if the payments were not made within
three months after the day appointed for the payment of
the last instalment, which became due on the thirtieth
of September, eighteen hundred and twenty-eight. No
mode is pointed out by this act, by which the represen-
tatives of a deceased purchaser, or assignee of a purcha-
ser, might avail themselves of its benefits. The Legisla-
ture of Alabama, by its act of the fourteennth of June,
eighteen hundred and twenty-one, (Laws of Ala. 344,)
invested the executor or administrator of the decedent,
with authority to claim the benefits of this act of Con-
gress, on behalf of the estates which were represented by
them. Acting under the authority conferred in this
manner, Weeden, the administrator of Rogers, in behalf
of his estate, claimed the further credit, and surrendered
the certificates of purchase which had been transferred
by Dickson; and certificates of further credit, under the
act of Congress, were issued. Thus the contract of Dick-

Rogers *vs.* Rawlings et al.

son with the United States, under the act of Congress of the tenth of May, eighteen hundred, was modified, and a new contract entered into, to be governed and controlled by the act of the second of March, eighteen hundred and twenty-one.

All the acts of Congress for the relief of the purchasers of the public lands, expired on the fourth day of July, eighteen hundred and twenty-nine, until which time they had been continued by several other acts of Congress; and after giving the utmost latitude to their terms, it will be seen that all lands sold on credit, and not paid for on the fourth day of October, eighteen hundred and twenty-nine, on that day reverted to the United States, and every interest of a purchaser, or derived from him, was at an end. It has hitherto been settled by decisions of this court, that the forfeiture under these and similar acts, requires no act of entry on the part of the United States, to make it complete and effectual—(Gill vs. Taylor, 3 Porter's R. 182; Kennedy & Moreland vs. McCartney, 4 Porter's R. 141.)

As all the estate of Dickson, or those claiming under him, was thus forfeited in eighteen hundred and twenty-nine, it would not be necessary to make any further examination of this case, if it was not supposed that the previous estate of Rogers, and consequently his widow's right of dower, was revived by the acts of Congress of eighteen hundred and thirty, and eighteen hundred and thirty-one.

The first of these was passed the thirty-first of March, eighteen hundred and thirty, and directs that all purchasers, their heirs or assignees, of lands forfeited, shall

Rogers *vs.* Rawlings et al.

have a right of pre-emption of the same lands, until the fourth day of July, eighteen hundred and thirty-one, upon their paying into the proper office, the sum per acre, which shall, at the time of payment, be the minimum price per acre, of the public lands of the United States, in addition to the amount heretofore paid thereon and forfeited ; *provided*, that the price, including what has already been paid, and the amount to be paid, shall not exceed three dollars and fifty cents per acre.

One of the quarter sections of land having been purchased at a sum exceeding fourteen dollars per acre, more than three dollars and fifty cents was paid by Dickson at the time when the purchase was made, and consequently his heirs or assignees became entitled to a patent, without their paying any more money. The act of the twenty-fifth of February, eighteen hundred and thirty-one, extended a similar benefit to the purchasers, their heirs or assignees, of all the forfeited lands which originally sold for less than fourteen dollars, if one dollar and twenty-five cents per acre, had been, or should thereafter be paid. Under this last act, the heir or assignee of Dickson became entitled to a patent for the other quarter section, as more than that sum was paid by him at the time of the purchase.

It is obvious, from the terms used by this act, that it was contemplated to bestow a benefit on the purchaser, his heir or assignee, and it must be considered as a mere gratuity on the part of the United States, to those individuals who were considered as the most fit and proper subjects to receive the donation or benefit. It could not be contended, with any propriety, that a creditor of a

Rogers *vs.* Rawlings et al.

purchaser would have any legal or equitable right to insist on this gratuity. If the case could be supposed, of one dying embarrassed with debt, the claim of the creditor, however morally just, could not be permitted to divest the heir of the purchaser, of the bounty conferred on him by the munificence of the government. In legislating on such a subject, the respective claims of creditors, widows and heirs, might well be considered and apportioned, but it is not for a court, in giving a construction to a statute, to depart from the plain and obvious intention of those who framed it, in order to substitute its own views of justice and equity, in the place of the clear and manifest directions of the law,

As we have arrived at the conclusion, that the land was *ipso facto* forfeited to the United States in eighteen hundred and twenty-nine, by the omission to pay the extended debt, and that the widow can claim nothing under the subsequent acts of Congress, it is not necessary to investigate any question which may be supposed to exist between the defendant, Rawlings, as the purchaser under the sale made by Weeden, and the heirs of Rogers, as it cannot in any manner affect the present claim.

Let the judgment be affirmed,