## Case No. 5,742.

### GREATHOUSE v. DUNLAP.

[3 McLean, 303.] [1]

Circuit Court, D. Ohio. Dec. Term, 1843.

PLEADING AT LAW—SUIT ON BOND—ILLEGAL CONSIDERATION.

1. A plea which does not traverse the facts averred in the declaration, but sets up new matter in defence, admits the case made in the declaration. So a demurrer to the plea admits all the facts of the plea which are well pleaded.

2. Want of consideration, on general principles, cannot be pleaded to a bond, nor fraud, except to the execution of the instrument. But under the statute of Ohio, both of these defences to a sealed instrument may be made.

[Cited in Hoitt v. Holcomb, 23 N. H. 554; Charter Oak Life Ins. Co. v. Hosmer, 1 D. C. 302.]

3. To an action on a bond to pay the sum that shall be recovered in a certain action then pending, between different parties, a defence cannot be set up which might have been avail-

[1] [Reported by Hon. John McLean, Circuit Justice.]

able in the first action. Fraud between the parties to such action might be shown.

[Cited in Gage v. Lewis, 68 Ill. 613.]

4. Bail cannot go behind the judgment against the principal.

5. The first judgment cannot be impeached collaterally.

6. The amount of the judgment is as conclusive against the bail as against the principal.

7. On a demurrer to any pleading, the court may go back to the first fault.

[See Bank of Illinois v. Brady, Case No. 888.]

8. A bond is good at common law, if entered into for a valuable consideration, and is not repugnant to any statute or the general policy of the law. It does not follow that a voluntary bond is void, where an individual undertakes to do more than the law requires.

9. A bond is void which shows upon its face an illegal consideration.

10. Every plea in discharge or in avoidance of a bond, should state particularly the matters of discharge or avoidance.

11. Where a bond is required in restraint of liberty, which the law does not authorise or require, it is void. But, in such a case, the facts must be specially alleged. They cannot be presumed.

12. Matters which make a deed void may be given in evidence, under the general issue of non est factum. But matters in avoidance must be pleaded.

At law.

Taft & Key, for plaintiff.
Mr. Hamer, for defendant.

OPINION OF THE COURT. This action of covenant is founded on the following instrument: "Whereas, there is now depending in the Mason circuit court, in the state of Kentucky, an action at common law, in which William Greathouse is plaintiff and John B. Mahan is defendant, in which the said Mahan has been and is confined in the jail of Mason county for want of special bail; and it is agreed by the said William Greathouse to discharge him from custody on condition that William Dunlap, of Brown county, in the state of Ohio, shall enter into this bond: Now, therefore, I, the said William Dunlap, do by these presents bind and oblige myself, my heirs, &c. that in case the said William Greathouse shall finally succeed in the said suit against the said John B. Mahan, that I, the said William Dunlap, will pay the amount of the recovery so finally had in the said suit against him the said Mahan, including all legal costs, dated the 22d of November, 1838." In each count it is averred, that on this bond being given Mahan was released from his imprisonment, and that in the case then pending there was recovered against Mahan the sum of sixteen hundred dollars in damages.

A special plea to the declaration was filed, which avers, "that the above bond was obtained by the fraud of Greathouse, in this, that on the 13th of August, 1838, at a circuit court held in the county of Mason, and state of Kentucky, he falsely and fraudulently procured a bill of indictment to be found a true bill by the grand jury then and there sitting against the said Mahan, charging him with aiding and assisting a certain slave, named John, the property of said Greathouse, to make his escape from his possession, to the state of Ohio, on the 19th of June, 1838, whereby the said Greathouse lost his said slave; that on the 22d of August, 1838, he made oath before a justice of the peace that the said Mahan was a resident of the state of Ohio; which oath, on being presented to the governor of Kentucky, a demand was made of the governor of Ohio, for the surrender of Mahan as a fugitive from justice, &c.; that he was surrendered through the procurement of the said Greathouse, and was committed to the jailor of Mason county aforesaid; whilst so imprisoned a civil suit was instituted against him by the said Greathouse, and upon such civil process issued the said Mahan was imprisoned in the said jail; and he avers that he was not guilty of the charges in the indictment, and was not a fugitive; that for fifteen years he had not been in the state of Kentucky; that the governor of Kentucky had no right to demand, nor the governor of Ohio to surrender him, &c.; that the surrender and demand were procured by the false and fraudulent misrepresentations of said plaintiff, made by him for the express purpose of removing said Mahan to Mason county, Kentucky, and confining him in prison, to enable him to harass and oppress said Mahan, and to induce his friends to become responsible for the unjust and unfounded claim set up by him against said Mahan, in and by said suit. All which was known to the said Greathouse before the finding of the indictment, the making of the affidavit, and the fraudulent procurement by him of said demand, arrest and imprisonment of said Mahan. That the bond was signed solely to release the said Mahan from said unjust and fraudulent imprisonment, so procured by said Greathouse in manner aforesaid. And therefore he avers the writing obligatory is void at law," &c. To this plea the plaintiff filed a general demurrer. No issue is tendered to the declaration the plea. It sets up new matter in bar to the case made in the declaration, and, of course, admits its allegations. So the demurrer to the plea, admits all the facts which are well pleaded.

The plea sets up fraud in the consideration of the bail bond, on which the action is founded, and this, it is insisted, cannot be pleaded to a sealed instrument. The want of consideration cannot be alleged to a bond, on general principles, nor can fraud be pleaded, except to the execution of the instrument. Reynolds v. Rogers, 5 Ohio, 170; 2 Johns. 177, 179; 13 Johns. 430; 8 Wend. 615, 618; 9 Cow. 307, 311, 314. But the statute of Ohio, of the 24th of February, 1834 (Swan's St. 685), provides, that a failure or want of consideration of a sealed instru-

ment may be pleaded. Under this statute a fraudulent consideration may be shown, as that would be one mode of showing a failure of consideration. The condition of the bond is, that Dunlap, the defendant, will pay the amount which Greathouse shall recover against Mahan, in a suit then pending in the circuit court of Mason county, Kentucky. On giving this bond, Mahan was released from his imprisonment in that suit. A judgment against Mahan was recovered, and the question is, whether the defendant can go behind that judgment. There can be no doubt that he might show collusion between Mahan and Greathouse; but this is not pretended. Can he go into matter of defence which it might have been proper for Mahan to have set up in the former action, and which he failed to do? Mahan, by his counsel, defended that suit; but the matters of fraud now pleaded by the bail were not relied on in the defence. Can these matters be now examined, in an action on bail bond. If fraud had been established in the action against Mahan, no judgment could have been had against him. The plea avers a fraudulent proceeding by Greathouse, in procuring the bill of indictment, the demand of the governor of Kentucky, the order of surrender by the governor of Ohio, the imprisonment of Mahan in Mason county, Kentucky, all done for "the express purpose of removing said Mahan to Mason county, Kentucky, and confining him in prison, to enable the said Greathouse to harass and oppress said Mahan, and to induce his friends to become responsible for the unjust and unfounded claim set up against him in and by said suit." The plea is less definite, than it should have been, in charging the fraud in the civil suit; but it is not important to dwell on that point. The part of the plea above cited does, though not in very technical language, so charge the fraud. Whatever grounds there may be for the averments of the plea, there can be no doubt, they should have been set up by Mahan in the suit against him. The fraudulent acts were done against Mahan, and not against his bail. And as Mahan did not avail himself of these acts in his defence, although he acted in good faith towards his bail, can the bail now plead them? If the bail may go behind the judgment against his principal, on one ground, to show that it was unjust, may he not do so on every other ground? Must the original plaintiff, in his action against the bail, be prepared to show the grounds on which his judgment against the principal was obtained? In such a case, does the original case stand open on its merits, as it stood in the first action? This would be to regard the judgment as nothing, not even prima facie evidence. As regards the amount of the judgment, it is as conclusive against the bail as against the principal. It is final and conclusive between the parties, and it can be considered

in no other point of view, when it is brought collaterally before the court, in an action against the bail. There are many conflicting decisions as to how far the admissions of the principal shall bind his surety. One class of cases holds that the acts and admissions of the principal, which constitute a part of the res gestae bind the surety, whilst another considers them binding beyond such limitation.

However courts may have differed as to the effect of the admissions and acts of principals in binding their sureties, none have doubted that special bail are bound by the judgment against their principal. And on the same principle, the bail must be bound in all cases where they undertake to pay, as in the case under consideration, the judgment that shall be obtained against their principal. If this be so, the plea in this case cannot be sustained. It not only goes behind the judgment in the case where the bail became bound, but the fraud in a prior and criminal case, is also alleged with the attending circumstances. This is not admissible by any known rule of pleading. But it is argued that the demurrer brings in review the declaration, in which the bond is copied at length, and by which its validity must be considered. It is true, that a demurrer, without regard to the party who has filed it, authorizes, and indeed requires, the court to notice the first defective pleading. In the first count of the declaration the bond is copied, and in the other two its terms are substantially stated, and the signature of the defendant. It is admitted that this is not a statutory bond, but it is important to see what provision the statutes of Kentucky have made in regard to appearance bail, and the extent of their liability. By the act of the 17th December, 1821 (1 Moreh. & B. St. Ohio, 195), "to abolish imprisonment for debt," &c., it is declared in the first section, "that all laws which authorize an execution against the body of the debtor are repealed." The 2d section provides that, "to entitle the plaintiff to bail on mesne process, he must swear that he verily believes the defendant will leave the commonwealth, or move his property out of the same before judgment," &c.

By the act of the 29th January, 1829 [1 Laws Ohio, p. 196], it is declared in the first section, "that when any person shall thereafter be held to bail in any civil action, according to the laws now in force, the undertaking of the bail shall be, that the defendant shall not remove his effects out of the commonwealth until the plaintiff's judgment, if one shall be recovered, is discharged." On the return of an execution, "no property found," under the second section of the same act, "a sci. fa. may issue suggesting that the defendant has removed his property out of the commonwealth." In Peteet v. Owsley [7 T. B. Mon. 130], 1 J. J. Marsh. 55, it was held, "that

bail, who entered into the recognizance after the act of 1821, abolishing the ca. sa. could not be made liable; for the bail could never be subjected to answer the debt or damages without a ca. sa. against their principal." But the remedy under the act of 1829 was referred to, where the recognizance had been taken as required by the statute. By the act of the 15th of January, 1827 [1 Laws Ohio, p. 630], the ca. sa. is revived in actions of trespass, vi et armis, in the action of trespass on the case, for words spoken or written, or for seduction. On the 29th of February, 1836 (3 Dig. 727, St. 58), a statute was passed, requiring the plaintiff to give bond and security, payable to the defendant, in a case where bail is required, "conditioned to pay all costs and damages which the defendant shall sustain, by the wrongful suing out the writ." And in the 2d section the same act provides, "that persons having no known place of residence in the commonwealth may be held to bail in any county in the state where they may be found." The bond required to be given by the plaintiff, as above, was given in this case. Whether the above act of 1836 has been so construed by the courts of Kentucky as to create a new liability by a defendant "who has no known residence in the commonwealth," does not appear. There is no reference to any such decision, in the Digest referred to, which was published in 1842. The affidavit filed by Greathouse, and on which bail was required, states, "that he verily believes the said Mahan will leave the commonwealth or move his property out of the same before judgment, or otherwise abscond," &c. As this oath conforms to the act of 1821, the application for bail is presumed to have been made under that act, and not under the act of 1836. If this be so, the special bail to which the plaintiff was entitled under the act of 1829, was "that the defendant should not remove his effects out of the commonwealth until the plaintiff's judgment, if one shall be recovered, shall be discharged." From the words of that statute, it would seem, that the form of bail, &c., was where it was required "under laws now in force." So that a subsequent law requiring bail to be given in a case which was not required to be done before, might not come under the act of 1829. From the proceeding in this case, as well as the words of the act of 1836, it is supposed that it has not been considered as affecting the conditions of the bail bond or recognizance under the act of 1829. The validity of the bond is rested by the plaintiff's counsel on the common law, and not on the statute.

In Rowan v. Stratton, 2 Bibb. 199; Cobb v. Curts, 4 Litt. [Ky.] 235: Stevenson v. Miller, 2 Litt. [Ky.] 306; Fant v. Wilson, 3 T. B. Mon. 342; Hoy v. Rogers. 4 T. B. Mon. 225; People v. Collins, 7 Johns. 554,— it is said. "that replevin and other bonds, required by statute, have frequently been decided by the court to be valid common law obligations, when not executed according to the statute." "And that the general rule is, that a bond, whether required or not by statute, is good at common law, if entered into voluntarily and for a valid consideration, and if not repugnant to the letter or policy of the law." 2 J. J. Marsh. 418; 3 J. J. Marsh. 437. In Justices of Christian Co. v. Smith, 2 J. J. Marsh. 472, it was held that "a bond for the construction of a bridge, made payable to the justices of the county, when the statute required it to be made payable to the commonwealth, was good at common law." The court say: "But as there is no statutory provision, making such a bond void, and the subject matter is such as the parties had a right to contract about, the bond is valid." And again, in 3 T. B. Mon. 392, the court say: "It is not necessary that the condition of an appeal bond should be in the form prescribed by the act of the legislature; if it have the same legal effect, it is sufficient." In the case of Postmaster General v. Early, 12 Wheat. [25 U. S.] 136, the court held a bond given by a postmaster to account, &c., was valid, although there was an express law requiring the bond to be given. In U. S. v. Linn, 15 Pet. [40 U. S.] 315, the court held that a receiver of public money having given an instrument in the form of a bond, but without seal, bound the sureties, and was valid, though the act of congress required a bond to be given. There are many other cases which might be referred to, in which voluntary bonds, which have not pursued the requisites of the statute, have been held valid as common law instruments; and also where they have been given without any express authority of law. If the subject be one about which the parties may lawfully contract, it being neither against any law or public policy, and a consideration has passed, courts have sustained and enforced such a contract. And it is insisted that such is the nature of the bond under consideration. It is said not to be inhibited by any law, and that the act of giving the bond should be construed as favorable to liberty, as through its means, Mahan was liberated from his imprisonment. On the other hand it is contended that the bond was against the policy of the law. That final process against the body of a defendant, except in two or three cases, having been abolished, special bail was only to be bound that the property of the defendant should not be removed out of the commonwealth. That the bond in this case having been given for the payment of the judgment which Greathouse might recover, being a greater obligation than the law required, must be held as against its policy, and consequently void.

It does not follow that the voluntary bond

of an individual is void, who undertakes to do more than the law requires. As, for instance, where no bond is required by a disbursing officer, and yet where one has been given, it has been held valid. And so where a bond does not pursue the precise form of the statute, it is good at common law. Where a bond has been given for a gambling debt, or on a sale of lottery tickets, the sale of which is prohibited, and the consideration appears on the face of the instrument, or is shown by plea, it is void. But this is not the case where the consideration does not arise out of an illegal and prohibited act. There is a class of contracts, which tend to a breach of the peace, the violation of good morals, &c., and though not prohibited by law, are, nevertheless void. But these belong to a different class from the one under consideration. In the case of U. S. v. Tingey, 5 Pet. [30 U. S.] 125, where a bond was given by a purser in the navy, which contained conditions beyond what the law required, the court considered the instrument, having been voluntarily given, as valid at common law. That bond, the court say, "was not limited to the duties or disbursements of Deblois, as purser, but creates a liability for all moneys received by him, and for all public property committed to his care, whether officially as purser or otherwise." The law required the bond for the faithful discharge of the duties as purser.

But in another part of the case the court, in considering the fifth plea, say that it was a complete answer to the action. "That plea, after setting forth at large the act of 1812 [2 Stat. 699], respecting pursers, proceeds to state that before the execution of the bond, the navy department did cause the same to be prepared and transmitted to Deblois, and did require and demand of him that the same with the condition, should be executed by him with sufficient securities, before he should be permitted to remain in the office of purser. &c., and that the condition is variant, &c., from the act of congress," &c. Under this plea, the court say: "There is no pretence to say that the bond was voluntarily given, or that though different from the form prescribed by the statute, it was received and executed without objection." And in the case under consideration if the defendant in appropriate terms had set out the imprisonment of Mahan under the civil process, the acts of Kentucky which require special bail to be given with the condition only, "that the defendant should not remove his property out of the commonwealth, until the judgment, if one should be obtained against him, should be satisfied;" and the plaintiff refused to liberate him until he procured the bond of the defendant, for the absolute payment of the judgment. should one be obtained against Mahan, it would have come, if the facts had been admitted by a demurrer, within the

principle of the case of U. S. v. Tingey [supra]. It would then have appeared that the bond was not voluntarily given, but had been illegally coerced by Mahan's imprisonment. Now it is difficult to say that the bond under consideration, bears upon its face any higher evidence of its having been given against public policy or the policy of the law, than the bond of Deblois and sureties. In both cases the law pointed out what kind of an instrument should be given, and in both instances the bonds were given containing conditions, imposing a greater obligation than the statute imposed, and yet the court held, the purser's bond, being voluntary, was valid at common law. What is there in the facts of the two cases, which should make them differ in principle. In the one case the liberty of a citizen was concerned, and in the other the rights of a public officer. There was oppression under color of office, in one instance, and in the other, through the process of the court. In U. S. v. Bradley, 10 Pet. [35 U. S.] 343, some points were ruled which also have a bearing on the case under examination. That was an action brought on a paymaster's bond, which did not conform to the words of the act of congress under which it was given. And it was contended that as the conditions of the bond were prescribed, and no authority to take a different bond, there was a prohibition from so doing. But the court say: "Upon the face of the pleadings, this must be taken to be a bond voluntarily given by Hall and his sureties. There is no averment that it was obtained from them by extortion or oppression, under color of office, as there was in U. S. v. Tingey." "All the pleas assert, in substance, is that Hall never gave any such bond as is required by the act of 1816" [15 Laws Ohio, p. 3], &c. "Now, (the court say,) no rule of pleading is better settled, or upon sounder principles, than that every plea in discharge or avoidance of a bond, should state positively and in direct terms, the matters of discharge or avoidance. It is not to be inferred, arguendo; or upon conjectures." And they further remark: "It may be added, that the bond is not only voluntary, but for a lawful purpose, viz.: to insure a due and faithful performance of the duties of paymaster."

Now what is there upon the face of the bond before us, which shows it to be illegal? Mahan was in prison, and was released on the bond being given by the defendant. It may be that the defendant preferred giving such a bond as he did give, to the one required by the statute; and under such circumstances, would not the bond be valid? As was remarked in the argument, the law did not prohibit such a bond, or declare, if given, it should be void. The bond is not in violation of public policy; for any man may agree to pay the debt of another. If then it was voluntarily given, as must be pre-

sumed, unless the contrary appear, and the condition on which it was given was performed by the obligee, it is not perceived how the bond can be held invalid. If the bond was exacted as a condition to the release of Mahan, and the law authorized no such exaction, and the defendant, through the influence of Mahan, was induced to give the bond, it might not be considered a voluntary bond. But these facts must be set up by plea—they cannot be presumed. The special plea having been disposed of, the case stands as though a general demurrer had been filed to the declaration. And viewing the case under this aspect, the bond must be considered as having been given voluntarily and on a condition performed. Under such circumstances, it is not perceived on what principle the bond can be considered void. Mahan being imprisoned by due process, neither his release, nor the consideration which procured it, would seem to be against public policy. The rule is, "that, while matters which make a deed absolutely void, may be given in evidence under non est factum, those which make it voidable only must be specially pleaded." Com. Dig. tit. "Pleader," 2 W, 18. And it seems that in general, objections to the legality of the consideration on which a deed was founded are referable to the latter class; for it has been decided, that where a condition of a bond is in restraint of matrimony, that ground of defence is not evidence under non est factum. Cotten v. Goodridge, 2 Black [67 U. S.] 1108. And that where a bond is given to compound a felony, that is matter which must be specially pleaded. Harmer v. Rowe, 2 Chit. 334, 2 Starkie, 36. And it is a general rule that "any illegality arising from the prohibition of an act of parliament, as in case of usury or gaming, is matter for special plea." These authorities are cited, not to show what may or may not be given in evidence under the general issue, but to illustrate the principle, that where matter is set up in avoidance of a bond, it must be pleaded. Where the illegality appears upon the face of the instrument, it may be taken advantage of by general demurrer, in arrest of judgment, or by a writ of error.

The demurrer to the special plea is sustained. Judgment, &c.