## John A. Williams *v.* Daniel H. Mears.

### (No. 8,346.)

1. Fraudulent representations prior to the execution of a deed, affecting the consideration, motives, or inducements leading thereto, did not, at common law, avoid the conveyance, but the grantor, his heirs or subsequent purchasers from him, could obtain relief only by bill in equity. If this objection may now be made under the code, in the defense of an action for the recovery of possession of real estate, it is only where the grantors, of the deeds, ought to be avoided, or one in priority asserts it by proper proceedings, averring the fraud, and giving the plaintiff notice of the defense.

2. The grantor of a deed can not, by subsequent parol statements, affect the title thereby conveyed.

3. Courts of equity will not aid a defectively executed advancement.

4. A deed of trust conveying property, owned by the grantor but occupied by his daughter and her husband, properly executed and recorded in the lifetime of the grantor, was handed by his son to the grantee, who thereupon called upon the daughter, and in the presence of her husband (the defendant), who made no objection, effected an arrangement by which she, being the *cestui que trust*, receipted to him for the rent as if collected and paid over to her. *Held:* sufficient evidence of delivery, although the authority of the grantor's son was not shown.

5. A deed to H., his heirs and assigns forever, in trust to collect rents, keep down taxes, and pay the net income to W., during her life, and after her death to her children or descendants until the age of twenty-one, and then to convey to them in fee simple, with a power of sale in certain contingencies, and to appoint a successor in the trust, vests the fee simple in H.

6. A provision that if W. leaves no children or descendants, the estate created by the deed shall determine, and the property descend to the heirs of the grantor, at most reduces the estate of the trustee only to a qualified or base fee.

7. Where a deed of trust, for the benefit of W. for life, directs the trustee, upon her death, to convey the fee simple to the heirs of her body, the deed will be construed as if it contained the instrument thus provided for, and the rule in Shelley's case does not apply, because a legal estate in remainder is limited upon an equitable life estate.

8. The word "heirs" is essential that the rule in Shelley's case may apply to a deed. No words of similar import answer the same purpose. Therefore, a remainder to children and the descendants of children does not enlarge a life estate given to the ancestor.

John A. Williams *v.* Daniel H. Mears.

GENERAL TERM.—Proceeding in error to reverse a judgment rendered by Judge Gholson after a trial by jury at special term.   The errors assigned are these: 1. Exclusion of relevant and competent testimony; 2. Error in the charge; and, 3, Refusal to grant a new trial.

The action was for the recovery of the possession of real estate and damages for its detention.   The pleadings are in the simplest form, the petition stating that the plaintiff is entitled to possession which the defendant wrongfully withholds, and claiming damage for its detention; the answer merely denying these averments.

The plaintiff below, Daniel H. Mears, was the son, and the defendant, Williams, was the son-in-law of John Mears. During the lifetime of his wife, Ann Louisa Williams, the defendant was put in possession of the premises in dispute by her father.

In the year 1856, a deed of trust was executed by John Mears.   This instrument conveys the premises to " Daniel H. Horne, his heirs and assigns forever," upon trust " to lease and to rent and to receive the rents, issues and profits arising and accruing from the same," and out of these to pay taxes and assessments, and the charges and expenses necessary to the well keeping thereof, and to pay over the " net rents, issues, and profits of the same to my daughter Ann Louisa Williams, for and during her natural life, for the maintenance and support of herself and her family, and the education of her child or children, without anticipation of the same on the part of my said daughter Ann Louisa Williams; and upon the further trust, on the death of my said daughter Ann Louisia Williams, bearing a child or children, or descendant or descendants of any child or children deceased of my said daughter Ann Louisa Williams, not having attained the age of twenty-one years, to pay over to such child or children or descendant or descendants of any child or children deceased of my said daughter Ann Louisa Williams, the net rents, issues, and profits so rising and accruing from the

property herein conveyed, for the maintenance and support, and for the education of such child or children or descendant or descendants of any child or children deceased of my said daughter Ann Louisa Williams, not having attained the age of twenty-one years, and on such child and children or descendant or descendants of any child or children deceased of my said daughter Ann Louisa Wiiliams, attaining the age of twenty-one years, then and in that case to convey to such child or children or descendant or descendants of any child or children deceased of my said daughter Ann Louisa Williams, such a proportional portion of the premises herein conveyed that such child or children, or descendants of any child or children of my said daughter Ann Louisa Williams would be entitled to, under the present statute of descent and distribution of the State of Ohio, and as if the estate herein conveyed had descended from my said daughter Ann Louisa Williams;" and with much and similar verbiage the deed proceeds to provide that if upon the death of Mrs. Williams, the *cestui que trust* of the remainder shall have already arrived at the age of twenty-one, the conveyance shall be made forthwith ; but if such *cestui que trust* fails to arrive at that age, and in default of children or descendants of Mrs. Williams, then that the estate created by the deed shall determine and the property descend to the heirs of the grantor.   There is also a power of sale in certain contingencies vested in the trustee, and a power to appoint his successor, and in case of his failure to appoint, the Probate Court of Hamilton County is authorized to appoint.

Horne accepted the trust, and proceeded to its execution, then resigned, and Daniel H. Mears, plaintiff below, was appointed by the probate court as Horne's successor in the trust; thereupon Horne conveyed the premises to the plaintiff, subject to the trusts and conditions of the original deed of trust.   In the year 1857, Mrs. Williams died, leaving an infant daughter, and Mears claims under the deed as trustee of this daughter, averring that the trust was created to support an estate for life in his sister Mrs.

Williams, with remainder in fee simple to the child. The defendant claims that the premises were given to his wife in fee simple, by way of advancement from her father in the year 1852, and that he has an estate for life therein as tenant by the curtesy; he further denies that the deed of trust, under which plaintiff claims, was ever delivered by his father-in-law, and claims that if delivered it conveyed to his wife an estate tail or an equitable estate of inheritance, in either of which cases he is tenant by the curtesy.

The errors complained of at the trial are particularly set forth in the opinion.

*J. B. Eaton* and *J. T. Crapsey*, for plaintiff in error.

*Nicholas Headington*, for defendant in error.

HOADLY, J., delivered the opinion of the court:

Upon the trial, at special term, the plaintiff proved that John Mears, the former owner of the premises in question, the father of the plaintiff and father-in-law of the defendant, conveyed the property in 1856 to Daniel H. Horne in fee simple upon certain trusts, hereafter more particularly to be considered; that Mr. Horne accepted the trust and acted under it; that he subsequently resigned, and the plaintiff was appointed his successor by the probate court, and thereupon Horne conveyed the premises to the plaintiff to be held upon the trusts of the original deed from John Mears.

During the trial, Horne was examined on behalf of the plaintiff, and upon cross examination several questions were asked him, which were objected to, and the objections sustained. One of these was directed to the condition of mind of John Mears prior to the time the deed to the witness was executed. The object of counsel was explained to be, not to show any fraud in the factum or act of execution, or any mental infirmity which rendered the grantor then incapable

of a valid execution, but by what had taken place previous to its execution, that it was procured by misrepresentation, imposition, and fraud of the plaintiff. The court then said that such evidence would be competent upon a petition filed by the proper party to have said deed set aside for fraud, but that in the present action it was incompetent, and therefore was excluded.

The common law rule is stated by Chief Justice Savage, in *Franchot* v. *Leach*, 5 Cowen, 508, in these words: " The fraud which avoids a deed is not a fraudulent representation as to the consideration, but a fraud relating to the execution of it, as a fraudulent misreading or obtaining such an instrument as the obligor did not intend to give."

For, at law, the consideration of a specialty could not be disputed, and fraud antecedent to the execution of the instrument, and entering into the motives and inducements which lead thereto, is excluded by the presumption of consideration. Such fraud only as rendered the specialty absolutely void and incapable of ratification except by re-execution, which so affected the instrument that it might be said to be not the act of the party, could be alleged against it at law. In the language of the Supreme Court of Indiana, in *Huston* v. *Williams*, 3 Blackf. 172, " if the defense is bottomed on the false, fraudulent, and covinous conduct of the obligee, in relation to the execution of the instrument, as where it is fraudulently misread, or where the obligee fraudulently induces the obligor to execute the instrument when he is incapable of judging for himself, either by reason of drunkeness or lunacy, or where the obligee does any other fraudulent act which shows that the obligor, in truth and fact, never, in the eye of the law, executed the bond, the facts may be given in evidence under the plea of *non est factum*, or they may be given in evidence under a general plea of fraud, covin, and false representation."

" But it appears," say the court, in another part of the same opinion, " that such a defense only relates to fraud, covin, and false representation in the execution of the writing

obligatory, and not to the consideration or inducement which influenced the obligor to make the bond."

In *Dorr* v. *Munsell*, 13 Johns. 430, Chief Justice Spencer, says: " The plea demurred to is bad. It sets up a fraudulent representation of the plaintiff's patent right, and in substance it is a denial of any consideration for the bond. At law, the defendant can not avoid a solemn deed on the ground of a want of consideration. That injury is precluded by the very nature of the instrument. The case of *Vroman* v. *Phelps*, 2 Johns. 177, is directly in point, that a fraudulent representation of the quality and value of the thing sold, forms no defense in a suit or specialty. In some of the elementary writers, it is stated that fraud may be given in evidence under the plea of *non est factum*. This must be confined to cases where the fraud relates to the execution of the instrument, as if a deed be fraudulently misread, and is executed under that imposition; or where there is a fraudulent substitution of one deed for another, and the party's signature is obtained to a deed which he did not intend to execute."

In *Jackson* v. *Hills*, 8 Cowen, 290, the same rule was applied in an action of ejectment. This position is sustained by a great weight of authority. *Parker* v. *Parmele*, 20 Johnson, 133; *Champion* v. *White*, 5 Cowen, 510; *Taylor* v. *King*, 6 Mumford, 366; *Wyche* v. *Macklin*, 2 Randolph, 426; *Logan* v. *Simmons*, 1 Dev. and Battle's Law, 16; *Swift* v. *Fitzhugh*, 9 Porter, 63; *Mordecai* v. *Tankersly*, 1 Ala. 100; *Stokes* v. *Jones*, 18 Ala. 737; *Greathouse* v. *Dunlap*, 3 McLean, 303; *Saunders* v. *Stotts*, 6 Ohio, 380; *Doe, dem. Raguet* v. *Roll*, 7 Ohio, 70, part 2; and there is, so far as we know, but a single case to the contrary, *Hoitt* v. *Holcomb*, 3 Foster, 535, in any State where there is an equitable jurisdiction vested in the courts.

This rule was modified in Ohio, so far as specialties for the payment of money, or delivery of property are concerned, by the act of of 1834, Swan's Stat. of 1841, p. 685.

In the case already cited from Indiana, the court say that " where the fraud, covin, and false representations, which are set up as a defense to a bond, are respecting the right, title,

amount, soundness, quantity, quality, or value, of the consideration which influenced the obligor to make the bond, the defense is equitable and not legal." P. 171.

In such cases, and by parity of reasoning, in case of a deed founded on natural love and affection, where the conveyance though intelligently executed by a grantor, mentally capable, is induced by antecedent false representations, fraudulently creating the motives for the gift, the conveyance is not void; it is entirely valid until avoided; it can be ratified even by parol, or, in some cases, by silence and acquiescence, and may be avoided by resort to a court of equty.

But the distinction between law and equity having been abrogated in Ohio, it is insisted that a deed may now be attacked for such defect, by a defendant, in a proceeding to recover possession of real estate.

We are not inclined to dispute this proposition, but the question is whether before the testimony becomes competent, it is not necessary for the party to show that he stands in such privity with the grantor of the conveyance proposed to be attacked, or has such an interest in the property, as authorizes him to object to the deed, and to ask that it be avoided by proper pleading to that effect.

It has been held in New York, *Dewey* v. *Hoag*, 15 Bar. 365, that while an equitable title may be a defense under the code, in such cases, it is only where the defendant becomes an actor, and asks affirmative relief by filing an answer containing all the averments necessary for a petition to that end.

This seems a just rule, at least where the equitable title needs judicial action to give it efficacy.

This deed is admitted to have been executed by John Mears, while possessed of sufficient mental vigor, and knowing and intending fully what he was doing. It is said, however, that by reason of falsehoods told him, and impositions practiced upon him previously, he was fraudulently induced to make the deed. In other words, that by reason of a fraud in the consideration, the deed is void.

Now, John Mears himself, his subsequent grantees, or his heirs, may avoid it, if this be so, by petition to that end; perhaps they may secure the same result by counter-claim or cross-petition. But as the deed is a complete transfer of the title until avoided, and as judicial action is necessary completely to avoid it, and as no judicial action has been asked, we do not suppose the testimony competent.

The attack must be made directly and not collaterally.

Whether the defendant is in the category of those who can object to the deed, even by proper pleading, is a question which can not be answered before deciding the merits of the controversy.

During the cross-examination of the same witness, he was asked as to statements made by John Mears, after the execution of the deed, with the view of attacking the validity of the title thereby conveyed. The court excluded the testimony.

In this there was no error. The grantor of a deed can not invalidate his conveyance by subsequent parol statements. *Chess* v. *Chess*, 1 Penn. 32.

Passing to the examination of the merits of the cause, we find the following state of case: The defendant married the daughter of John Mears. During the lifetime of his wife, they were put in possession of the premises in dispute by Mears. In 1856, the deed of trust was executed. In 1857, Mrs. Williams died, leaving an infant daughter.

The plaintiff claims under the deed as the trustee of this daughter, and avers that by its true construction, a trust was created to support an estate for life in Mrs. Williams, remainder in fee simple to the child.

The defendant claims, 1. That the premises were given in 1852 to his wife, by her father, in fee simple, by way of advancement, and that he is entitled to an estate for life therein as tenant by the curtesy.

2. He denies that the deed of trust was ever delivered.

3. He claims that if it was delivered, it conveyed to his wife, Ann Louisa Williams, an estate tail, or an equitable

estate of inheritance, in either of which cases he is tenant by the curtesy.

*First.* As to the claim of an advancement in 1852. The testimony on this subject is this: Williams testifies, " I took possession of the property in controversy in October, 1852, and have continued in possession ever since. Mr. John Mears put me into possession. He said he had bought the property for my wife, Ann Louisa Williams. I have expended four or five hundred dollars for the repairs of said property from time to time, since I have had possession of it." On cross-examination, he said: " My wife and myself were living together, and moved into said property together, when the possession of it was given to me by John Mears, and we continued to live together as man and wife until her death." Daniel H. Horne testifies as follows: " Mr. Mears told me that before he bought this property, Williams had complained of having to pay a high rent for a shop. I suppose the property is worth from $2,000 to $3,000. I have seen improvements being made, and some painting, since Williams took possession." He also says that he and the plaintiff spent much time with John Mears in the winter of 1855–6, looking over his papers, among other things, in reference to the advancement he had made to his children, preparatory to making his will. Again he says: " I paid no consideration for the property in controversy, when it was conveyed to me as trustee. I suppose the value of it was charged as an advancement to Mrs. Williams."

During the course of the trial the plaintiff offered in evidence the will of John Mears, executed March 7, 1856, for the purpose of showing " that even if it was proper by way of counter-claim to set up the defense that the trust deed to Daniel H. Horne, above mentioned, was procured by fraud, the defendant had no title, in case the deed was invalid, upon which he could base that defense." Objection was made, but overruled, and an exception taken. On the hearing before us this exception was waived, and the will strongly relied on as furnishing corroborative evidence of an advance-

ment in 1852. The will disposes of the entire property of the testator after providing for his widow, and giving sundry legacies, by a disposition among his children and grand-children, the shares of all except Daniel H. Mears, being given to trustees upon trusts similar to those of the deed to Horne. In the course of the will occurs this provision : " In this division of my estate into shares, I direct that the money and property which I have heretofore given and conveyed to my children and to my deceased daughter, Esther Mary Tomlinson, and to her two surviving daughters, Sarah L. and Louisa Jane Tomlinson, as an advancement, an account of which will be found in my account book, and signed by me, and which are as follows : * * * to Ann Louisa Williams, $12,141.33, * * * and all further sums that may hereafter during my life be advanced and charged on my book to their respective accounts, and the said aggre-gate sum so advanced and charged shall be added to the amount of my remaining estate, and the whole amount then to be divided into five equal shares ;" one of which he gives to Daniel H. Horne, upon substantially the same trusts, for the benefit of Mrs. Williams and her child, as are contained in the deed to him.

The account book here referred to is not a part of the bill of exceptions, but we were furnished with it at the hearing, and, at the request of counsel, have given it consideration.

The account against Mrs. Williams begins with an item dated March 3, 1854. Then follow charges dated respect-ively March 3, 1854, October 26, 1854, January 24, 1851, December 4, 1852, December 15, 1855, August 30, 1855, February 1, 1855, June 5, 1855. Then follow four charges without date, and then this item also without date, " real estate on Sycamore street, above Fifth, $3,604.98." After several other charges, some of other real estate, all without date, follow these words : " The foregoing account against my daughter, Ann L. Williams, is correct, and the amount, $12,141.33, is what I heretofore advanced as stated, and is the amount also which I have named in my last will and

testament to be charged to the portion of my daughter, Ann L. Williams. Cincinnati, March, 1856. Signed, John Mears."

That Mears considered this property as having been advanced in some form to his daughter when he made his will, we do not doubt. The question is whether he referred to the provision made by the deed of trust, or to a previous advancement made in 1852.

Whatever advancement was made in 1852 was, we think, by parol. The language of the will, in which allusion is made to the money and property heretofore given and conveyed by way of advancement, is not definite enough, to omit for the present other objections, to bear the presumption, which counsel seek to found upon it, that a conveyance was made in 1852.

The statute of frauds forbids a conveyance by parol of any other than a possessory interest. So, that so far as this advancement was executed, it is as an advancement of the possession, nothing more. The cases we shall presently cite show that a parol advancement can not be taken out of the statute by possession. There must be a purchase and a consideration to work that result. An advancement is worthless unless executed. It stands as a mere gratuity, to which no one has a right, and which, if the donor does not himself perfect, must fall. Equity will not aid the enforcement of a defectively executed advancement. 2 Story's Eq. Jur., sec. 706a, 793a; *Holloway* v. *Headington*, 8 Sim. 324; *Jefferys* v. *Jefferys*, 1 Craig and Phillips, 138; *Callaghan* v. *Callaghan*, 8 Cl. and Finn. 374.

The cases of Lessee of *Barton's Lessee* v. *The Heirs of Morris*, 15 Ohio, 408, and *Tremper et al.* v. *Barton*, 18 Ohio, 418; so much relied on by counsel, do not affect this proposition. There, the advancement was executed. A perfect legal title, sustained as such in ejectment, passed to Edward Barton, Jr.

But we are satisfied upon the facts that even if equity did aid imperfect advancements, there is no case of that kind

here. In 1852, Mears put his daughter into possession, retaining the title. The presumption is, that he intended then to do just what he did, to-wit: give her the use of the premises for the time being, reserving for the future the disposal of the title. In March, 1856, he made a deed of trust conveying the premises for her benefit, and charged her with the price on his book of accounts, and referred to it in his will. The charge on the book, and the reference in the will, both point, we think, to the deed of trust. That instrument bears date the 11th of March, 1856, six days before the date of the will. It seems clear, therefore, that whatever he intended, the advancement he made in 1852 was of the possession only, and the advancement he finally perfected is contained in the provisions of the deed of trust. To that instrument, therefore, we are remitted to ascertain the defendant's rights.

*Secondly.* In approaching the consideration of this deed, we are first met by the objection that no proper proof has been made of its delivery. Ordinarily, the fact that an instrument is in the possession of the grantee, raises a presumption of delivery. It is contended that this presumption is overborne by the testimony of Mr. Horne, who says that after that deed was recorded, it was handed to him by the plaintiff. Whether this was done at the request of John Mears is not expressly shown, but it would not perhaps be an unwarrantable inference. However that may be, when Horne received the deed, he called on Mrs. Williams, in her husband's presence, and effected an arrangement to which Williams had no objection, by which instead of collecting rent from the defendant and paying it over to his wife, she receipted half yearly for the money, as if collected, and remained in possession. This, it seems to us, was a recognition of the efficacy of the deed, with in connection with the fact that the deed was recorded in the lifetime of John Mears, and is in the possession of the grantee, makes a *prima facie* case of delivery at least, although it was handed to Horne after its record, by the granter's son, whose authority is not shown.

*Thirdly.* As to the estate conveyed by the deed of trust.

Upon this instrument the first question which arises is as to the estate of the trustee. It is claimed that he takes but a chattel interest, and that Mrs. Williams being the grantee of the rents and profits, has a legal life estate which the rule in Shelley's case enlarges to a fee tail.

But the deed expressly clothes the trustee with the fee simple by the use of words of inheritance in the granting clause. Moreover, the duty imposed upon him to convey to the *cestui que trust* in remainder, and the power of sale, require that estate, and upon the familiar rule that a trustee takes as large an estate as may be necessary for the execution of his trust, would give him a fee even if words of inheritance were omitted. Or, even in the absence of these, the duty of collecting rents and providing for taxes, and paying to the *cestui que trust* only net income, vests in a trustee the legal estate. *Lessee of Boyd* v. *Talbert,* 12 Ohio, 212.

The provision made for the contingency of a failure of descendants of Mrs. Williams, can, at most, only reduce the trustee's estate to a qualified or base fee. *Edward Seymor's Case,* 10 Rep. 95, b.

Having thus ascertained the estate of the trustee, let us consider that of the *cestui que trust.*

It is claimed that Mrs. Williams takes a fee tail by virtue of the rule in Shelley's case, the words of the deed giving her a life estate, and the remainder to her children and descendants to the last generation, which are tantamount to saying "heirs of her body." If the words "heirs of her body" had been used, it is said that the life estate would be enlarged by that rule into a fee tail, and the words used are claimed to be precisely equivalent.

But it is to be remembered that the life estate created by this deed is an equitable estate. The remainder is also an equitable estate, until the *cestui que trust* reaches the prescribed age of twenty-one years, when the trustee is obliged to convey the fee simple. Assuming that, that which is directed to be done is done, we have here the case of an

equitable life estate, with a legal remainder limited upon it. To such cases the rule in Shelley's case does not apply. *Lord Say and Seal* v. *Lady Jones*, 3 Bro. P. C. 113; S. C., 1 Eq. Cases Abr. 383; *Playford* v. *Hoare*, 3 Younge and Jer. 175; *Venables* v. *Morris*, 7 Term Rep. 342, 348.

If the deed therefore conveyed to Horne in trust for Mrs. Williams during her life, remainder to the heirs of her body, she would take but a life estate. And although the remainder does not here become a legal estate until the trustee' conveys, the reasons for the exception seem to apply as fully as if the deed itself limited a legal remainder. For there is nothing to show an intent that the remainder man shall take by inheritance, or the tenant for life an inheritable estate. The quantity of property only is to be the same as if it had descended, not the quality of the estate. The estate when conveyed is of a different nature from the life estate of the *cestui que trust*, being taken by purchase through a deed from the trustee, the grantee obtaining thus a legal estate, while Mrs. Williams enjoyed but an equity.

The case of *Venables* v. *Morris* is to the point. There a legal estate for life was limited to S. Morris, remainder to the use of such persons as Hannah Morris should by deed appoint. By proper conveyance, she executed her power by creating a use in favor of the right heirs of S. Morris. The defendant claimed the fee by descent from S. Morris. It was admitted by Lord Kenyon that the execution of the power made no difference, for where a power is executed in pursuance of a deed, it is to be taken as if the execution were inserted in the original deed, but because the estate created by the execution of the power was equitable, and the life estate legal, he denied the application of the rule in Shelley's case.

Here is not the case of a power, but of an express direction. So much the more reason, therefore, for reading the deed of trust as if it contained the deed which it provides for from Horne to the *cestui que trust*. And thus read, it limits a legal remainder upon an equitable life estate, and does not come within the rule in Shelley's case.

But the words, " heirs of the body," are not used in this deed, and even if it were admitted that their use would have given Mrs. Williams a fee tail, we think them indispensable for that purpose, and that no equivalent language answers the same end.

The very eminent lawyers who examined this rule with so much learning and ability in the great case of *Perrin* v. *Blake*, and the discussions to which it gave rise, were divided into two schools of legal thought.   Lord Mansfield, Mr. Justice Blackstone, and the majority of the Court of King's Bench, regarded it as a rule of interpretation, and that a manifest intent would authorize a court to treat the words heirs, heirs of the body, etc., as words of purchase, and these opinions were deemed by Judge Story to be those generally adopted in this country.  2 Greenl. Cruise, 305, note.   This doctrine was applied in *King* v. *Beck*, 15 Ohio, 559, to the case of a devise.

Applying this view of the rule in .Shelley's case to the deed in question, all difficulty is removed.   For nothing can be clearer than the intent to give Mrs. Williams only a life estate.

But Mr. Justice Yates, the Court of Exchequer Chamber, Mr. Hargrave, and others, regarded it as a fixed rule of property, originally established to prevent a fraud upon the feudal superior, who in cases of descent was entitled to wardship and marriage, while upon a purchase only the trifling acknowledgment of relief was due to him, and also to avoid abeyances of the fee.   Hence, Mr. Hargrave says, where it is once settled that the donor or testator has used words of inheritance according to their legal import, has applied them intentionally to comprise the whole line of heirs to whom the succession is to be regulated, then the rule in Shelley's case applies, and the heir shall not take by purchase.   Hargrave &·Butler's Notes to Co. Litt. 319 b, 376 b.

This statement of the rule confines it to cases where "words of inheritance are used according to their legal import," and accordingly no case can be found where the use of any other

word than "heir" has been held to warrant the application of this rule.

The word "heir" in the singular does not create a case for the rule in Shelley's case. *Waker* v. *Snowe*, Palm. 359; *Bayley* v. *Morris*, 4 Ves. 788.

Nor will the words " child, children, or issue," have such effect. Cruise's Dig., title 32, chap. 23, sec. 28.

For among the reasons given for the rule is this, that the use of the word "heirs" imports a taking by descent, and the words are senseless unless construed as words of limitation, because *nemo est hæres viventis*, and as no one is an heir but he who inherits, hence its use conclusively shows a design to give an inheritable estate. And this conclusion follows from no equivalent words.

For these reasons we are of opinion that the rule in Shelley's case does not apply to this case, and that under it Mrs. Williams took but a life estate.

Another reason for so holding might perhaps be urged, to-wit: that the deed does not contemplate " the whole line of heirs to the tenant for life, and so builds a succession upon her preceding estate of freehold," but only uses language by way of designation to indicate a remainder in the heir, who, living at the death of the tenant for life, shall attain the age of twenty-one years. This would, it is well settled, take the case out of the operation of the rule in Shelley's case, but it requires a construction of the deed, which we do not feel called upon to give.

The court charged the jury that under the deed from John Mears to Horne and from Horne to the plaintiff, the legal title passed to the plaintiff, and that he was entitled to recover. No exception was taken at the time, but we are satisfied that there was no error in the charge, and that the law of the case is thus stated.

And this being so, there was of course no error in overruling the motion for new trial.

This result furnishes another reason for sustaining the court in excluding testimony. For it now appears that

Williams does not stand in a position to sustain an action to set aside the deed of trust for fraud.    And while at *nisi prius*, before his title is fully disclosed, a court might not be willing to exclude the testimony on this ground alone, a reviewing court will not disturb the result, if the party appears to have no interest in the question.

Judgment affirmed.