Scott, judge,
delivered the opinion of the court.
This was an action of trover brought by the appellees on the 5th February, 1846, against the appellants for three slaves, Charlotte and her two children, Woodson and 'George.
Waysman and Roy, two of the appellees, are sons-in-law of James Howe, having intermarried with his daughters Martha Ann and Hetty. The other appellee, A. J. Howe, is a son of the said James Howe. The appellees claimed the slaves in controversy under a bill of sale executed to them hy Edmund Shackelford, in Kentucky, for the slave Charlotte, who, after the sale, bore the two children, Woodson and George. The bill of sale was dated 28th July, 1829. Howe, the father, testified that he was the only guardian of his two daughters up to the time of their marriage, they being minors when the slave Charlotte was conveyed to them ; and that he was still the natural guardian of A. J. Howe, who is also a minor. He further testified to facts tending to prove the execution of the original sale bill by Shackelford, after which a copy of it was read in evidence. The slaves were with James Howe until he sold them to the appellants, who were, it was admitted, in possession of them. The defendant then offered in evidence a bill of sale of the slaves Charlotte and Woodson, executed by James Howe, the father of the appellees, to the appellant, John H. Howe, on the 2d April, 1881, for the sum of $400, which was excluded by the court. The appellants *171 then to show title to Charlotte in James Howe, the fathei’, offered to prove that in July, 1829, and before that time the said Howe was greatly indebted and insolvent in the State of Kentucky, that witli his own money and with no part of the money or property of the appellees he purchased the slave Charlotte from Edmund Shackelford and procured the said Shackelford to make the bill of sale to the appellees, with the design and for the avowed purpose of shielding the said slave Charlotte from his Howe’s creditors ; that he took possession of said bill of sale and of the said slave Charlotte and brought her from Kentucky to this State, where he sold her and her child Woodson to the appellant John H. Howe, for the price of $400, which was. their full and fair value at the time, and without notice of the conveyance by Shackelford to his children. This evidence was likewise excluded. There was a verdict for the appellees for the value of th.e slaves and their hire. The appellants having saved exceptions to the opinions of the court, after an unsuccessful motion for .a new trial brought the case to this court.
This court is impressed with the importance of protecting the rights of infants, who, besides their natural infirmities, labor under legal disability imposed on account of their want of discretion. No system of jurisprudence which did no.t make such a class of citizens an object of its peculiar care, could commend itself to our reverence or affection. Bona fide gifts and conveyances to minor children living with their parents, they being their natural guardians, are not affected with fraud, merely from their want of possesssion. The possession of the father is regarded in law as. the possession of his infant child. But as a gift or conveyance may he fraudulent when possession is actually delivered to the donee or alienee, so an imputation of fraud may be made where there is a gift or conveyance by a father to his infant children living under his protection and control. A father may make a valid gift to his children, but its validity is always liable to be questioned. The claims of affection must be postponed to those of justice. Such transactions are narrowly watched for the inducements, to them by those in adverse circumstances are so great, that the claims of justice would be in constant danger of a sacrifice if they were permitted to pass without a rigid scrutiny. Had the conveyance in. this case been made directly by the father to his children, there e-an be no doubt it might have been attacked for fraud by those who. were injured by it.. Can the circumstance that the father instead of making it directly, sold his property and with the proceeds thereof' made the purchase in the name of his children, affect the question.. That which is prohibited from being *172 done directly is prohibited from being done indirectly. Why should a man be prohibited from giving his estate away to the prejudice of his creditors, and yet be permitted to sell it, and with the proceeds purchase property in the name of others. Is it not the same thing in effect; as evidence was offered to show this transaction fraudulent, we are to regard it, as the case now stands, as actually proved. If, then, it was fraudulent as to those affected by it, it is as though it had not been done. The property is where it was before any thing was done. The intricacy of the machinery, the number of instruments employed in effecting the conveyance can make no difference. In Cadogan vs. Kennett Cowp 434, Lord Mansfield observed that the principles and rules of the common law are as strong against fraud in every shape as the statutes of 13 and 27 of Elizabeth, and those statutes are considered as only declaratory of the common law. So in the case of Hamilton vs. Rupress, 1 Cr. 99, Chief Justice Marshall held that the statutes of 13 and 27 of Elizabeth were only declaratory of the common law. In Fermer’s case, 3 Coke 78, it was held that the common law doth so abhor fraud and covin, that all acts, as well judicial as others, and which of themselves are just and lawful, yet being mixed with fraud and deceit, are in judgment of law wrongful and unlawful. The conveyance then being fraudulent, it is void according to the principles of the common law. If the contrivance adopted in this case has been effectual to screen property from creditors, would it not have been resorted to in numberless instances. A case exactly like the present has not been found in the books after some search. Who does not see that such a principle would lead to consequences entirely subversive of all confidence and credit among men. Who would give credit if it was deemed fair and lawful to place property beyond the reach of creditors as was done by the parties to this transaction ?
It will be observed that this case differs from those relied on by the appellees. The aid of a court of equity is not solicited in behalf of creditors for property placed beyond, the reach of an execution at law by the contrivance of their debtors. But a right is here asserted by those claiming under a conveyance alleged to be fraudulent, and an attempt founded on the manner in which the conveyance has been effected, is made to prevent an inquiry into the transaction- The case of McKeeny vs. Parsley 1 A. J. Marshall 114 decides nothing more than that a person to avoid a fraudulent conveyance must show himself a creditor or purchaser. The case of Crozier vs. Young, 3 Mon. 157 is more alike that under consideration, and deserves some attention. That *173 was a bill to set aside a purchase of bank stock made in the name of his children by a debtor in failing circumstances. The bill was dismissed and Roberts on Fraudulent Conveyances and Croke Car. 550-were cited in support of the decree. The case of Crisp vs. Pratte in Croke furnishes no aid in support of the grounds assumed by the court. There was a special verdict in the case, and no fraud being found, it was held that none could be presumed, and all the judges base their opinion upon the absence of fraud. That too was a case under the act of 21 Jac. in relation to bankrupts. The dictum in Roberts is founded on what fell from the Lord Keeper in the case of Fletcher vs. Sedley, 2 Ver. 490: Lord Hardwicke afterwards in the case of Peacock vs. Monk 1 Ves. Sen 130, speaking of this last case, says it was only the-inclination of the court on the argument of counsel, and it would be dangerous to allow the arguments there. Indeed, it is impossible to read the case of Crozier vs. Young without coming to the conclusion that its doctrines are at variance with what is understood to be the wellIJ settled law of the day. The cases on this subject are collected by chancellor Kent in the case of Bayard and al vs. Hoffman and al, 4 John C. 450. The doctrine that a man may make a fraudulent purchase, and that he may make a settlement of choses in action in fraud of his creditors, it will be obvious from an examination of the cases, is founded on the notion which prevailed in early times, that money and such things were not subject to execution, and therefore a creditor could not be injured by such acts as the law afforded no process for reaching them. In the case of Bean vs. Smith, 2 Mason, 274, Judge Story asks is it true that the granttee can appropriate the proceeds of a sale to his own use or to the secret trusts of the fraudulent conveyanee against a judgment creditor. Will not a court of equity decree that the fraudulent grantee shall account to the judgment creditor for-the amount of the proceeds of the sale, considering them as a mere substitute for the original fund. It appears to me, he says, that such a course is within the established doctrine and practice of the court. Equity will permit a creditor of an estate to sue the debtor, where there is collusion between the latter and the executor ; a fortiori it will sustain a suit where the very fund appropriated by law for the payment of the debt is withheld by a fraudulent grantee. In the case of Bayard vs. Hoffman above cited, chancellor Kent comes to the conclusion from a review of the cases, that the doctrine is not law, that voluntary settlements of property which a creditor could not reach by legal process-are valid against creditors, even if made by insolvent debtors. He ob *174 serves* lie would be sorry to find this the doctrine of the court. It seems to be too encouraging to fraudulent alienations, and a. debtor under the shelter of it might convert all his property into stock and settle it upon his family in defiance of his creditors, and to the utter subversion of justice. Money may too, now, be taken in execution. Turner vs. Fendall, 1 Cr. 117, Hardy vs. Dobbin 12 J. R. 220, Means vs. Vance 1 Bay S. C. Rep. 39.
It was contended that although creditors might avoid such conveyances, ye.t there is no reason for conferring the same privilege upon a subsequent purchaser. In 4 Kent’s Commentaries 464, it is said that it is now the settled American doctrine, that a. bona fide purchaser for a valuable consideration is protected under the statutes; of 13 and 27 Eliz. as. adopted in this country, whether he. purchases from a fraudulent grantor or a fraudulent grantee, and that, there is no difference in this respect between a deed to defraud subsequent creditors and one to defraud subsequent purchasers. The cases of Anderson vs. Roberts 18 John and Bridges vs. Eggleston 14 Mass. 245, maintain the same doctrine.
There were some minor points, made in the brief of the appellants* hut as they were not noticed in the argument and as the grounds of them were not stated, they will not now be determined especially as the question ruled will on a future trial obviate their recurrence.
The other j.udgas concurring, the, judgment will b,e reversed and the cause remanded with directions to the judge below to receive the evidence of fraud excluded on the former trial-