## STOKES *vs.* JONES.

1. Where a father has executed to his son a voluntary deed, which is fraudulent as against creditors or subsequent purchasers, the marriage of the son, after its execution and before it is avoided, will not give it validity.

2. A *bona fide* purchaser from one, who has made a previous conveyance of the property, by deed fraudulent and void as to creditors or subsequent purchasers, is not estopped by the prior deed, although it may contain full covenants of warranty.

3. A deed, containing reservations in favor of the grantor, and made with the intent to hinder and delay his creditors, is void.

4. Acts *in pais*, subsequent to the execution of a deed for land, cannot estop the grantee, in a court of law, from asserting his title. The fraud, which, at law, will vacate the deed, must relate to its execution.

ERROR to the Circuit Court of Greene. Tried before the Hon. Geo. D. Shortridge.

EJECTMENT by the plaintiff against the defendant in error. By the bill of exceptions it appears, that the land in controver-

sy was purchased from the United States prior to 1829, by one McCartie, and partially paid for, and that he afterwards sold his interest in it and transfered the certificate of purchase to John Stokes, sen'r; that the said John Stokes, sen'r, on the 24th February 1829, conveyed said land by deed of gift to his children, of whom the plaintiff, then eleven years of age, was one, the deed containing a clause of warranty and the condition that the grantor and his wife in consideration of the conveyance were to live with and be supported by the grantees; that at the time this deed was executed the grantor was involved in debt; that after the execution of the deed, the whole amount of the purchase money not having been paid, the land was forfeited to the United States, and was subsequently entered and patented to the said John Stokes, sen'r, and in 1847 sold and conveyed by him to the defendant for a valuable consideration without notice. It further appears that the plaintiff before the conveyance of the land to the defendant married, and his wife was still living at the time of the trial, and that after the sale to the defendant, the plaintiff not knowing of said sale, offered to buy the land from his father and did other acts conducing to show a recognition of his father's title, but it was proven that at that time he had never seen or heard of the deed of gift to himself and others.

The plaintiff requested the court to charge the jury, that the subsequent marriage of the plaintiff as shown by the proof constituted him a *bona fide* purchaser of the land, which charge the court refused to give.

The two charges given by the court are set out in the opinion. To the refusal to charge as asked and to each of the charges given the plaintiff excepted, and now assigns them as error.

WEBB, for the plaintiff in error.

PECK, for the defendant.

PARSONS, J.—We do not deny the doctrine that a voluntary, or even a fraudulent deed in its creation, and voidable by a subsequent purchaser, may become good by matter *ex post facto*. But the deed now complained of as voluntary and fraudulent, is a deed from a father to his son, and the matter subsequent which is relied on to give it validity, is the marriage of the

son, after the execution of the deed; and the controversy is between the son himself and a subsequent purchaser from the father. We think the son's marriage can avail him nothing, whatever may be the rights of his wife, in the event she survives him, upon which we give no opinion. This disposes of the first assignment of errors.

2. After the land in controversy had been conveyed by John Stokes, sen'r, to his son, the plaintiff, the land was forfeited to the Government by reason of the non-payment of the remaining part of the purchase money for which the land was liable. The bill of exceptions states the fact that the land was forfeited; therefore, it is not necessary to notice the several acts of Congress upon the subject; and, besides, they were particularly examined in Rodgers v. Rawlings et al., 8 Port. 325. All the rights of the son, under the deed from his father, were gone by the forfeiture. It was after that, when the father made an entry of the land in the land office, and thus became the purchaser and obtained the patent. This entry was altogether independent of the original inchoate right of the father and of the right of the son, both of which had reverted to the United States. The title of the father under his entry and patent was not in *esse* when he conveyed to his son, therefore, it did not pass by that conveyance; but as the deed from the father to the son contains a warranty, there are cases to show that the warranty, as between them, may operate as an estoppel against the subsequent title of the father, for avoiding circuity of action.—McCracken v. Wright, 14 Johns. 193, and authorities cited. Whether the father's subsequent grantee would be bound or not by such an estoppel under ordinary circumstances, is immaterial now, for his subsequent grantee, the defendant, alleges that the father's deed to the son was, as to himself as a subsequent purchaser without actual notice, and as to the father's creditors, fraudulent and void, and there was enough in the evidence to raise that question for the jury. It is not necessary to enquire whether the father, at the time of his conveyance to his son, had any interest in the land which could be reached by his creditors. If he had not, still, his fraudulent intent strongly appears from the face of the deed and other evidence, and in certain events, which actually happened, he might and did subsequently acquire an interest which would be liable, and the question is whether by

the deed to his son, he could fraudulently create an estoppel to operate against his creditors or subsequent purchasers, so as to protect his future acquisitions from them. This we think he could not do. It is stated by Chancellor Kent as the now settled American doctrine, that a *bona fide* purchaser for a valuable consideration is protected under the statutes of 13 and 27 Eliz., as adopted in this country, whether he purchases from a fraudulent grantor, or a fraudulent grantee; and that there is no difference in this respect between a deed to defraud subsequent creditors, and one to defraud subsequent purchasers. They are voidable only and not absolutely void.—4 Kent's Com. 464, 6th edit.; Anderson v. Roberts, 18 Johns. 515.; Bean v. Smith, 2 Mason, 252; Bridge v. Eggleston, 14 Mass. 245; Martin v. Cowles, 1 Dev. & Bat. 29; Somes v. Brewer, 2 Pick. 184; Violet v. Violet, 2 Dana, 324; 3 Metc. 332; Eddins v. Wilson, 1 Ala. 237.

3. The second charge of the Circuit Court (which it is convenient to notice here, out of its order in the bill of exceptions) was, that if the deed of the father, under which the plaintiff claims, was fraudulent as to the creditors of the former, he could not stipulate in the deed for any benefit to himself. If it was intended to say that such a stipulation or reservation, with intent to defraud his creditors, would make the deed void, it was right. A debtor has no right to make such a reservation at the expense of his creditors and with intent to defraud them.

4. The remaining charge of the court was that if the jury should believe from the evidence, that the plaintiff permitted his father to remain in possession of the land in question and to be treated as his property, by his offering to purchase it from him, either for himself or as agent of another or in any other manner, and that thereby the defendant was induced to purchase it from the father, that then such conduct, on the part of the plaintiff, would be a fraud on the defendant and the plaintiff could not recover.

If the plaintiff had done all this, after he was aware of the fact that his father had conveyed the land to him and others during his infancy, it might have been an estoppel in equity to his title, though not at law.—Swick v. Sears, 1 Hill's (N. Y.) Rep. 17. A fraud which will vacate a deed of lands in a court of law, must relate to the execution of the deed.—Mordecai & Wanroy v.

Tankersley, 1 Ala. 100. But the inference from the evidence is that the plaintiff knew nothing then, or may have known nothing, of his title. In this state of the case, the only question is, whether such conduct, in ignorance of his rights, could prevent him from recovering in a court of law. We think it could not, and that therefore the charge was erroneous, and for this the judgment is reversed, and the cause remanded.