## STOKES *vs.* JONES.

1. A voluntary deed, made to hinder, delay and defraud creditors, may be avoided in a court of law, by a creditor of the grantor's or a *bona fide* purchaser for a valuable consideration.

2. When the question is one of fraudulent intention in the execution of the deed, the court cannot pass upon the effect of the testimony, but must leave the question of fraud *vel non* to the decision of the jury; but when the bill of exceptions recites, that "it was expressly proved that the conveyance to the plaintiff was made to delay, hinder and defraud the grantor's then existing creditors," and that there was no conflict in the proof, it is not error to charge the jury, "that, if they believe all the evidence, they must find for the defendant."

3. A voluntary conveyance, with covenants of warranty, of lands in which, at the time of its execution, the grantor had not such an interest as could be subjected by his creditors either in law or equity, but to which he afterwards acquired title, is void as to creditors and subsequent *bona fide* purchasers, if made to hinder, delay and defraud the grantor's creditors; a voluntary fraudulent estoppel is impotent to defeat the just claims of creditors and *bona fide* purchasers.

4. Where a voluntary conveyance from father to son, made to hinder, delay and defraud the grantor's creditors, contains a condition that the grantor shall, during his life, remain with the grantee and be supported by him, and the grantee at the time of its execution is an infant of tender years, and does not accept or in any way bind himself to the performance of the condition until after a sale by the grantor to a *bona fide* purchaser for a valuable consideration, his subsequent acceptance and part performance of the condition cannot relate back so as to defeat the intervening sale to the *bona fide* purchaser.

Error to the Circuit Court of Greene.

Tried before the Hon. Thomas A. Walker.

Ejectment by the plaintiff against the defendant in error. It appears by bill of exceptions, that the land in controversy was originally purchased from the Government of the United States by one McCarty, under the credit system; that having made partial payment, and obtained from the land office certificates of such purchase and payment, McCarty transferred his interest in the same to John Stokes, Sr., who, while he thus held the land, executed to his children a deed, in which he recites, that, for and in consideration of the love and affection which he bore for his children, therein named, and for one dollar by each of them in hand paid, and for divers

other good reasons, considerations and causes him thereunto moving, he gave, granted, conveyed, &c., to his children, severally named in the conveyance, the respective property set apart and designated as the share of each; and, after making a conveyance of real and personal estate to several of the children, the grantor conveys to the plaintiff the land in controversy. The deed contains a general clause of warranty, as to the title conveyed to the respective grantees. The conveyance is subject to the condition, that the grantor and his wife should remain with the said children, and be by them supported for and during their lives.

The deed appears to have been acknowledged before the clerk of the County Court, and recorded on the same day of its execution; and on the day following was taken into the possession of Willis B. Stokes, who paid $3 for its execution and $2 for recording it, and who retained it in his possession until within a short period next before the commencement of this suit. It appears that said Willis was the only one of the children who had attained the age of twenty-one years when the deed was made, the plaintiff then being of the age of eleven years, and residing with the grantor. The grantor and his wife continued to reside with their children, the grantees in the deed, and to receive from them assistance and support, until the death of Mrs. Stokes; and he now resides with one of said grantees.

After the execution of said deed, the land in controversy was forfeited to the Government, by reason of the non-payment of the purchase money remaining due, and the same was afterwards entered by said John Stokes, Sr., the grantees in the deed furnishing a portion of the money with which the entry was made. A patent was issued to said John Stokes, Sr., and on the 30th January, 1847, the land was sold and conveyed by him to the defendant in this suit, for a valuable consideration. The proof conduced to show, that the land in controversy was wild, uncultivated, forest land, and had never been reduced into actual possession by any one.

It is stated in the bill of exceptions, that, at the time the deed to the children was made, the grantor was seriously involved in debt, and that said deed was made to delay, hinder and defraud the then existing creditors of the grantor. Sev-

eral circumstances were proved tending to establish a recognition by the plaintiff of John Stokes, Sr., as the owner of said land and property conveyed by the deed, after the conveyance was made; but it also appears the plaintiff was not then apprised of the execution of said deed, or of his rights under it.

It was also shown, that all the debts existing at the time of the execution of the deed to the children, had been paid off, and that a portion of the funds thus appropriated had been raised by the sale under execution of the personal property conveyed by the deed.

It is then stated in the bill of exceptions that, " on this testimony and these facts, there being no conflict in the proof, the court charged the jury, that, if they believed all the proof, they should find for the defendant." This charge was excepted to, and presents the subject matter assigned for error.

J. D. Webb, for plaintiff in error:

1. The parties claim title from the same vendor. The plaintiff's deed is prior in point of time to that of defendant's, by nearly twenty years. The deed of the plaintiff is impeached for fraud, not in its execution, but as tainted with the intention to delay and defraud the grantor's existing creditors. If this were true, it would only render the deed voidable, and not absolutely void. 18 Ala. 737, and authorities there cited; 1 ib. 102. Some of the grantees still hold property conveyed to them by this deed.

2. If plaintiff's deed is only voidable, can he be prevented from a recovery in a court of law? The deed clothes him with the legal title, until it is made null and void by the action of a court of equity. See authorities above cited. Can he divest himself of the title with which he is clothed, in any other manner than by a conveyance or the act of a court of equity setting aside the deed. West v. Tilghman, 9 Iredell's Law R. 113; 16 Ala. 714.

3. The grantor's intention to commit a fraud on his creditors, was a question of fact to be ascertained by a jury. The court erred, in determining that the grantor's intention was to defraud his creditors. 9 Ala. 944; 17 ib. 611.

4. The court erred in deciding this deed void; because the

grantor, at the time of its execution, had no such title as could be sold either at law or in equity. The title was in the Government; he had not paid for it; and after the execution of plaintiff's deed, he actually forfeited it, and the land reverted to the Government. Story's Equity, 372, § 367.

5. The deed could not be declared void for fraud, unless the grantee participated in the grantor's meditated fraud on his creditors. 16 Ala. 574.

6. That this deed, though tainted with fraud in its inception, could and did become good by matter *ex post facto*, see this case in 18 Ala. 735. There the court recognize that doctrine, and say that the matter relied on to give it validity is the marriage of the son. That was one ground; but we then held, and now hold, that all the grantor's debt, existing at the time of the execution of the deed and contracted since, having been paid, and he being entirely solvent and free from debt, this purges the fraud, and is matter *ex post facto* to make the deed good. Story's Equity, 375, § 371.

7. This court will reverse the judgment of the court below; because, from the bill of exceptions it appears, that there was a conflict in the testimony offered. The plaintiff's deed is directly in conflict with the defendant's. Givens v. Harvin, 19 Ala. 491.

WM. M. MURPHY and E. W. PECK, *contra:*

1. The language of the bill of exceptions is: "It was expressly proved, that the said deed was made for the purpose of hindering, delaying and defrauding his then existing creditors;" and as to this, or to any other facts, there was no conflict of proof. A deed so made is voidable, as against subsequent creditors and purchasers. Stokes v. Jones, 18 Ala. 736.

2. "All the rights of the (plaintiff) son under the deed from his father, were gone by the forfeiture." 18 Ala. 736. The entry subsequently made passed no title to the son; it could not inure under a voluntary deed made before entry.

3. Plaintiff's deed is fraudulent upon its face, because it stipulates for a benefit to the grantor. A debtor has no right to make such a reservation, at the expense of his creditors, and with intent to defraud them. 18 Ala. 737. The deed is admitted to have been made in violation of law.

4. Defendant purchased without actual notice of plaintiff's claim; and indeed, the record shows that plaintiff himself was ignorant of his claim, and purchased a part of the same land from his father. See the case of Sterry v. Arden, 1 Johns. Ch. 266, where the English and American authorities are all collated.

5. The support of the grantor was not the consideration of the plaintiff's deed; it was made "for natural love and affection," and was conditional. The subsequent acceptance and performance of the condition by the grantee could not have the effect of defeating a prior *bona fide* purchaser.

CHILTON, C. J.—1. The first question presented by the record is, can a court of law avoid a deed in favor of a *bona fide* purchaser for a valuable consideration, which was made to delay, hinder and defraud creditors. The counsel for the plaintiff insists, that the deed can only be avoided for this description of fraud, in a court of equity, and that the fraud which will vitiate a conveyance in a court of law, must relate to its execution. There are cases where this general language has been held; as in the case of Mordecai & Wanroy v. Tankersley, 1 Ala. 102, where the learned judge in delivering the opinion, says: "There is no doubt that a deed may be vacated in a court of law for fraud; but the fraud must go to the execution of the deed, otherwise it would not be cognizable in a court of law." So in this case, when before us at a previous term, (18 Ala. 731,) it was said: "A fraud which will vacate a deed of lands in a court of law, must relate to the execution of the deed."

In the first case, the attempt was to impeach a deed, valid in its creation, by the subsequent fraudulent conduct of one of the parties to it; and in the second case, the language was used in reference to the argument that the plaintiff, by offering to buy a portion of the same land, had fraudulently induced the defendant to purchase, and had thereby created an estoppel. As applicable to the facts of each, the court very properly said, the fraud to be cognizable at law must relate to the execution of the deed; that is to say, if the title to the land actually vested in the purchaser, it is not, in a court of law, divested by the subsequent fraud; but it was certainly

not intended to affirm that a voluntary conveyance, conceived in fraud, and made to delay, hinder and defraud creditors, could not be avoided by a creditor or *bona fide* purchaser for a valuable consideration, in a court of law. Such a decision would oppose many adjudications of this court, as well as the views of elementary writers on the subject. The case of Carter v. Castleberry, 5 Ala. 277, is directly in point; as also Forrest & Lyon v. Camp, 16 ib. 642, and Johnson v. Thweat, 18 ib. 741. See also, Roberts on Frauds, pp. 72, 596; Gregg v. Lessee of Sayre and wife, 8 Peters, 252.

2. But it is objected to the charge, that inasmuch as the fraud complained of consists in the intention of the grantor, it should have been referred to the jury to ascertain whether that intention existed. When the question is one of fraudulent intent, the court cannot properly pass upon the effect of the testimony, but must leave the question to be solved by the jury, as to whether the act done was coupled with such intent. Thomas v. Degraffenreid, 17 Ala. 611; Castillo & Keho v. Thompson, 9 ib. 944. The case before us, by the peculiar phraseology of the bill of exceptions, is not obnoxious to this objection. It is said: "It was expressly proved, that the conveyance to the plaintiff was made to delay, hinder and defraud the grantor's then existing creditors." The proof establishing this conclusion is not set out, and there is no conflicting proof. It has often been said, that the bill of exceptions must be construed most strongly against the party excepting; and applying this rule of construction to the case before us, we are bound to conclude that the plaintiff conceded the sufficiency of the proof to establish the fraudulent intent; since, instead of setting out the proof which tended to establish the intent, (in which case the jury, and not the judge, must determine as to its effect,) he broadly states the effect of the evidence, and concedes that "it was expressly proved the deed was made to defraud the creditors of the grantor." If, therefore, the fraud was expressly proved, we are unable to perceive any error in the charge to the jury, that, if they believed the proof, the plaintiff could not recover. The charge, construed with reference to the fact stated in the bill of exceptions, was tantamount to an instruction that, if they believed it was expressly proved the deed

under which the plaintiff claimed was made to delay, hinder and defraud creditors, the plaintiff could not recover against the defendant, who was shown to have purchased the land from the fraudulent grantor, after the conveyance to the plaintiff, and to have paid a valuable consideration therefor. If the jury had found a special verdict, setting forth the facts stated in the bill of exceptions, the court might properly have pronounced judgment in favor of the defendant; for the law arising upon the facts stated, without the aid of inferences of other facts from them, is in favor of the defendant, and adjudges the title of the plaintiff against him void. Such being the case, and there being no conflict in the proof, there was no error in the charge, that, if the jury believed all the proof, (which, if true, established these facts,) they must find for the defendant.

3. But a very ingenious argument is urged by the plaintiff's counsel to establish the validity of his deed, notwithstanding the fraud. It is this: When John Stokes, Sr., conveyed the land to the plaintiff, he had neither a legal nor equitable title to it, and as the creditors who were attempted to be defrauded could not have subjected his interest in the land, either in law or in equity, to their demands, the case does not fall within the prohibition contained in the statutes of fraud of 13 and 27 Eliz.

We are aware that the adjudications upon this point are somewhat conflicting. Mr. Justice Story says, that after various discussions, the English courts have settled down upon the doctrine, that in order to make a voluntary conveyance void as to creditors, either existing or subsequent, it is indispensable that it should transfer property which is liable to be taken for the payment of debts. 1 Story's Eq. Jurisp. § 367, n. 1, (4 Ed.) This learned author, however, fails to give any decisive opinion of his own as to the soundness of the English rule. On the other hand, Mr. Chancellor Kent ably combats the doctrine, and vindicates the justice and policy of the rule which requires courts of equity to afford relief, in cases of fraudulent alienations of property, whether such property could be reached by execution at law or not; for, otherwise, a debtor might convert all his property into stock or choses in action and settle them upon his family, set-

ting his creditors at defiance. Bayard v. Hoffman, 4 Johns. Ch. Rep. 452; ib. 687; 1 Story's Eq. § 368, n. 1.

The latter doctrine is sanctioned by this court. See Gannard et al. v. Eslava, 20 Ala. 732. But it is unnecessary to dwell upon this point, or review the cases which bear upon it, inasmuch as the previous decision in 18 Ala. 734, is decisive of it. We there held, that if the deed from John Stokes, Sr., to his son (the plaintiff) was fraudulent, it could not, by virtue of the covenant of warranty contained in it, operate against his creditors or subsequent purchasers, so as to protect his future acquisition of title from them. The voluntary fraudulent estoppel is as impotent to defeat the just claims of creditors or *bona fide* purchasers for a valuable consideration, as the deed would be had it contained no covenant out of which the estoppel is supposed to arise. A party cannot do by circuity and indirection what the law forbids to be directly done. He cannot avoid the claims of creditors or *bona fide* purchasers, by conveying with warranty to defraud them, and afterwards acquiring the title. The deed being fraudulent, is void as to the defendant, and wholly inoperative, except as between the parties to it. "According to the greatest authorities," says Mr. Roberts, "a *covinous* conveyance of land is no conveyance as against the interest intended to be defrauded, and ought by the rules of good pleading so to be treated, where the party is seeking to avail himself of the statutes of fraudulent conveyances." Roberts on Fraudulent Conveyances, p. 596.

4. The deed in this case contained a condition, the acceptance and performance of which would have created a valuable consideration; but the grantee was an infant of tender years when the deed was made. He had not accepted it, nor in any way bound himself to the performance of the condition, before the sale of the land to the defendant. Indeed, he was not apprised of its existence until long afterwards. It was as to him, therefore, at the time of the subsequent sale, purely voluntary, and his subsequent acceptance and part performance could not relate back, so as to defeat the intervening sale to a *bona fide* purchaser.

Let the judgment be affirmed.