Craig v. Zimmerman.

87 475
37a 152
87 475
46a 449
87 475
118 375
87 475
87a 484

CRAIG v. ZIMMERMAN *et al.*, *Appellants.*

1. **Fraudulent Conveyance:** INNOCENT PURCHASER. A *bona fide* purchaser for a valuable consideration from a fraudulent grantor is not affected by the fraud of the latter. But he must be a *bona fide* purchaser as well as one for a valuable consideration to be so protected.

2. ——— : ———. A purchaser with notice may protect himself by purchasing the title of a *bona fide* purchaser for a valuable consideration without notice.

3. ——— : ———. A purchaser without notice of the fraud may sell and convey a good title to one having notice, and the quit-claim deed of the former, where the property was subject to no equities in his hands, will pass whatever title he had.

*Appeal from Buchanan Circuit Court.*—VINTON PIKE, Esq., Special Judge.

REVERSED.

*J. W. Boyd* and *E. C. Zimmerman* for appellants.

(1) The decree is not warranted by the evidence. The evidence does not show that appellants received the deed from Bender without any consideration and with knowledge that Bender held the title fraudulently. (2) The evidence shows that Albin had more than suffi-

-cient property to pay the debt and, therefore, respon-
,dent's suit cannot be maintained. *Payne v. Sheldon*, 63
Barb. 169; *Jennings v. Howard*, 80 Ind. 216. (3) The court
should not have set aside the deed from Tootle to appel-
lants. An innocent purchaser can convey a good title to
,one having notice. *Funkhouser v. Lay*, 78 Mo. 458.

*H. M. Ramey* for respondents.

BLACK, J.—The plaintiff is a judgment creditor of
.Albin. By this suit he asked and obtained a decree set-
ting aside certain deeds and subjecting the lot in question
to sale for the payment of his debt of which there is
.about one thousand dollars unpaid. In 1870 the defend-
.ant, Albin, made a mortgage to the Home Stock Insur-
.ance Company to secure a stock note for five thousand
.dollars. This mortgage was foreclosed in 1875 and the
property sold thereunder, and the defendant, Bender,
became the purchaser of some seven or eight parcels in-
.cluding the lot in question. A judgment was recovered
by T. A. King in March, 1874, against Albin and Matney.
Howard King also obtained judgment against the same
parties in May, 1874, Bender purchased the Howard
King judgment for a small consideration, had execution
issued thereon and in 1879 again purchased the same and
,other property at a sale thereunder. In October, 1880,
Bender conveyed the lot in question to defendant, Zim-
merman, who in December of the same year acquired a
quit-claim deed from Tootle. From the decree setting
.aside these deeds the defendant, Zimmerman, appealed.

The evidence shows that, in 1873, Albin became em-
barrassed. The insurance company determined to go
into liquidation, and to that end made a call upon Albin
for three hundred and ninety-five dollars. Albin did not
pay this amount, and the company at once foreclosed
the mortgage for the whole amount of the note, then
.over six thousand dollars, and assigned the judgment

to Bender for the three hundred and ninety-five dollars. At that time Albin was a director of the insurance company and consented to the foreclosure for the whole amount, when he knew the call only was due. It is with this assigned judgment that Bender was enabled to buy in the property valued at from three thousand to five thousand dollars. Bender thereafter conveyed to Albin's wife two of the lots without any consideration. The evidence shows beyond doubt that the whole scheme of selling the property under the Howard King judgment and the judgment foreclosing the mortgage, was a contrivance by Bender and Albin to place the property out of the reach of the latter's creditors and, therefore, fraudulent.

Zimmerman claims to be a *bona fide.* purchaser for value from Bender. In 1878 there was a sale of property of Matney and Albin under executions issued on the two King judgments. Both Bender and Zimmerman attended this sale and ran the property up on T. A. King, who became the purchaser of most of the property then sold. They did this in the interest of Albin. At this sale, Zimmerman purchased and received a deed for several parcels of property and then without consideration quitclaimed the same to Bender. These two deeds last mentioned were never put to record. Zimmerman afterwards purchased from T. A. King the same property which the latter bought at that execution sale ; none of the property included in the mortgage was included in the deed to T. A. King. When Bender purchased the mortgaged property under the junior King judgment, and which judgment he then owned, he at the same time had sold and bought this property sold to King, and thereafter without consideration conveyed the same by quit-claim deed to Zimmerman. Albin says he and Bender and Zimmerman acted in concert in all of these transactions with a view of preventing the property from being sacrificed. This Zimmerman denies. The evidence shows

that these parties were all on friendly terms and consulted together with respect to Albin's affairs, on different occasions. The number of deeds made by and between these parties and their character are significant facts. These transactions and circumstances, and others which we need not detail, show that Zimmerman must have had full and complete knowledge that Bender's title was fraudulent. This is certainly true as respects the property now in question.

The deed from Bender to Zimmerman was a warranty deed and the latter paid therefor at least one thousand dollars in the discharge of incumbrances placed on the lot by Bender and in payment of taxes due at the time of the purchase. A *bona fide* purchaser for a valuable consideration from a fraudulent grantor is not affected by the fraud in this prior conveyance. *Wineland v. Coonce*, 5 Mo. 296; *Howe v. Waysman*, 12 Mo. 169; *Gordon v. Ritenour*, ante, p. 54. But he must be a *bona fide* purchaser as well as for valuable consideration. R. S., sec. 2505; Bump on Fraud. Con. (3 Ed.) 492; Story's Eq., sec. 434. Plaintiff's right to the relief asked is clear as to the title acquired from Bender.

A more difficult question arises because of the title acquired from Tootle. It appears from the pleadings that Tootle purchased the lot under a judgment against Albin and others rendered in 1876. Zimmerman says, and the statement is not disputed, that soon after he got the deed from Bender he learned Tootle had a claim to the lot. Bender could not or would not get in this claim. Zimmerman thereupon gave Tootle fifty dollars for the quit-claim deed. That Tootle had the title as against Bender and Zimmerman cannot be doubted. He had the same right to set aside these fraudulent deeds that plaintiff has. In Story's Eq. Jur., sec. 409, it is said : "Thus a purchaser with notice may protect himself by purchasing the title of another *bona fide* purchaser for a valuable consideration without notice; for otherwise such *bona fide* pur-

chaser would not enjoy the full benefit of his own unexceptionable title." So a purchaser without notice of the fraud may sell the property to a person who has notice and pass a good title to the purchaser. *Evans v. Nealis*, 69 Ind. 148 ; *Stewart v. Reed*, 91 Pa. St. 287 ; *Funkhouser v. Lay*, 78 Mo. 459. It is true, the deed from Tootle was a quit-claim deed, but the property was subject to no equities in his hands, and the deed would pass whatever title he had. Tootle purchased at an execution sale and stood in the position of the judgment creditor. He acquired a title in fee as against Albin, Bender and Zimmerman, and a title which was prior and superior to the plaintiff's demand on the property. He had a title free from all taint. And Zimmerman took it as Tootle held it.

The rule is essential to enable purchasers under like circumstances to dispose of their property, and we unstand it to be well settled. This case is not like that where a party holding a voidable title, because of actual fraud, makes improvements or pays off incumbrances. Here, the defendant sets up the deed and claims title thereunder. There is nothing in the evidence which will justify us in holding that Zimmerman purchased this lot from Bender or from Tootle to hold for the use of Albin. When Zimmerman purchased this property of Bender he gave Bender a contract agreeing to re-convey the property on payment of twelve hundred and fifty dollars, on or before the first of December, 1880. Bender says the time was extended and that only eight hundred dollars is due. He says in his answer that he brings this amount into court, but we do not understand from this record that this money was ever in fact tendered or brought into court either by plaintiff or Bender.

The deed from Tootle to Zimmerman should not have been set aside, and as we hold that conveyed a good title the judgment is reversed. Norton, J., dissents. the other judges concur.