# Gilliland *v.* Fenn.

## *Statutory Action in nature of Ejectment.*

1. *Fraudulent and voluntary conveyance; title of subsequent purchaser from grantor, as against heirs of deceased grantee.*—A conveyance which is voluntary, and infected with a fraudulent intent, or fraud in fact, though valid as between the parties, is void as against creditors and subsequent purchasers (Code, § 1735); and a subsequent purchaser from the grantor is within the protection of the statute, equally with a purchaser at execution sale, although he had notice of the fraudulent conveyance, and acquires a title which is superior to that of the heirs of the deceased fraudulent grantee.

2. *Same; subsequent title from purchaser at execution sale.*—If the lands thus fraudulently conveyed are sold under execution in favor of an existing creditor, and the grantor afterwards procures a conveyance from the purchaser at the sale, the title thus acquired enures to the fraudulent grantee, as between the parties, but not as against a subsequent purchaser for valuable consideration from the grantor.

APPEAL from the Circuit Court of Etowah.

Tried before the Hon. JOHN B. TALLY.

This action was brought by Mrs. Melissa Fenn and others, children and heirs at law of John H. Sheppard, deceased, against J. R. Gilliland and others, and was commenced on the 28th February, 1887. The tract of land sued for, which contained several hundred acres, once belonged to A. W. Sheppard, and was conveyed by him, by deed dated May 15th, 1867, and duly recorded, to said John H. Sheppard, who was his son. The deed recited a consideration of $3,000 paid, but it was in fact voluntary, and the evidence showed that it was executed with the intent to hinder, delay and defraud creditors. At the time this deed was executed, John H. Sheppard was living on the land, with his father; and he continued to live on a part of it until his death, in August, 1872. On the 5th April, 1869, the land was sold by the sheriff under execution against said A. W. Sheppard, and was bought at the sale of R. B. Rhea, one of the plaintiffs in execution. The execution was issued on a judgment which was rendered on the 10th October, 1867, and which was founded on a note dated February 6th, 1866. Rhea, as the purchaser at the execution sale, brought an action against A. W. Sheppard to recover the land, and the suit was settled by compromise on the 27th April, 1877; Sheppard paying $1,250 in satisfaction of the judgment, and Rhea executing to him a quit-claim deed to the land. A. W. Sheppard

[Gilliland v. Fenn.]

had continued in the possession of the land; and he sold and conveyed, for valuable consideration, to J. R. Gilliland,—one portion of the land in December, 1877, and another in August, 1883. The plaintiffs relied on their title as heirs at law of John H. Sheppard, under the deed to him from said A. W. Sheppard; and the defendants on the deeds of said A. W. Sheppard and J. R. Gilliland. The court charged the jury, on request, that they must find for the plaintiffs, if they believed the evidence; and this charge, to which the defendants excepted, is now assigned as error, together with the refusal of several charges asked.

JAS. AIKEN, and DORTCH & MARTIN, for appellants, cited *Elliott v. Horn*, 10 Ala. 348; *Stokes v. Jones*, 18 Ala. 734, and 21 Ala. 731; *Huggins v. Perrine*, 30 Ala. 396; *Reid v. Smith*, 14 Ala. 380; 1 Amer. L. Cases, H. & W. Notes, 17; *Stiles v. Lightfoot*, 26 Ala. 443; *McGuire v. Miller*, 15 Ala. 394; *Beall v. Williamson*, 14 Ala. 55; *Eddins v. Wilson*, 1 Ala. 237; *Corprew v. Arthur*, 15 Ala. 525; *Savings Bank v. Eborn*, 84 Ala. 536; 44 Iowa, 642; 35 Iowa, 288; 2 Dev. Deeds, § 947.

WM. H. DENSON, *contra*.—(1.) The deed from A. W. Sheppard to John H. Sheppard was valid and operative, as between the parties.—11 Amer. Rep. 295, 757; 97 Amer. Dec. 208; 98 Amer. Dec. 777. (2.) The registration of this deed was constructive notice to subsequent purchasers from A. W. Sheppard.—Code, § 1797, and citations; 54 Miss. 78; Wait's Fraud. Conv., §§ 373-4. (3.) A subsequent purchaser from the grantor, with notice, is not within the protection of the statute of frauds.—2 Pomeroy's Equity, § 974, and cases there cited; Wait's Fraud. Conveyances, 484-5, § 369; Bump on Fraud. Conveyances, 493; *Corprew v. Arthur*, 15 Ala. 528; *Foster v. Walton*, 5 Watts, 378; *Bank v. Douglass*, 11 Sm. & Mar. 548; *Prestidge v. Cooper*, 54 Miss. 74; *Sanger v. Easterwood*, 19 Wend. 514; *Bank v. Patton*, 1 Rob. Va. 500; *Chaffin v. Kimball*, 23 Ill. 36; *Fowler v. Stoneum*, 62 Amer. Dec. 490; *Earle v. Burch*, 33 N. W. Rep. 254; *Cathcart v. Robinson*, 5 Pet. 264; *Anderson v. Roberts*, 9 Amer. Dec. 235; 10 Ohio St. 162; 51 Texas, 457; 79 Penn. St. 459; 3 Fed. Rep. 443; 24 Kansas, 780. (4.) The fraud in the deed from A. W. to John H. Sheppard was purged by the subsequent payment of the judgment in favor of Rhea, the only creditor who could be defrauded; and the title conveyed by Rhea to A. W. Sheppard at once enured to the benefit of John H. Sheppard, on the principle of estoppel.—*Carver v. Jackson*, 4 Peters, 85;

[Gilliland v. Fenn.]

*Hargrave v. Melbourne,* 86 Ala. 270; *Booker v. Knight,* 82 Ala. 549; 2 Herm. Estoppel, § 647; Tiedeman on Real Property, §§ 727-9; *Irvine v. Irvine,* 9 Wall. 617-25.

SOMERVILLE, J.—The main point of contention in this case involves an inquiry into the relative priority of the conflicting claims of title in ejectment—that of the plaintiff being derived by immediate inheritance from an alleged fraudulent donee, and that of the defendants under a conveyance for valuable consideration from the alleged fraudulent donor.

The salient facts as to the conveyance are these: The grantor, A. W. Sheppard, being largely indebted, conveyed to his son, John H. Sheppard, substantially his entire property, consisting of a farm, except one tract of about forty acres upon which his residence was situated. The recited consideration is $3,000, but the evidence tends to show that no consideration whatever in fact passed between the parties, but that the transaction was purely a voluntary conveyance; and, further, that it was a mere sham, made expressly with the fraudulent intent to hinder or delay creditors. The father continued to occupy the premises with the son, there being no visible change of possession by either; and the evidence tends to prove that he (the donor) still collected and appropriated the rents derived from certain occupying tenants; that he even furnished the son money to pay the taxes on the land, and, as between the parties, the whole affair was regarded as a secret trust mutually intended to cover a transparent fraud on creditors; and that the son asserted no real claim of title as against his father. This deed from the father to the son was recorded. Afterwards, the father sold the land to the appellant Gilliland, as the evidence tends to prove, for a valuable and adequate consideration in cash. The son having died, his heirs bring this suit, claiming title under him.

The question under consideration is one in which there is no little conflict of authority, as observed on all hands in the text-writers and the adjudged cases. The apparent difficulties seem to me to have arisen from a failure, in some instances, to properly distinguish the application of the principles involved on their bearing on two classes of conveyances: (1) those that are merely *voluntary;* and (2) those which, in addition to being voluntary, are infected with an *actual fraudulent intent.* Another source of conflict is the difference of opinion as to how far *notice* of the prior conveyance, and its nature, will affect the title of the subsequent purchaser from the fraudulent donor, or grantor.

There are some important propositions which we may

formulate as premises in this discussion, as to which little, or no doubt can exist. They will serve as valuable aids in arriving at a correct solution of the question in hand.

1. All executed conveyances, whether voluntary, or actually fraudulent, are unquestionably valid *inter partes.* Such a conveyance is binding on the grantor, his heirs and personal representatives, and is absolutely unassailable by them.—*Coffey v. Norwood,* 81 Ala. 512; *Davis v. Swanson,* 54 Ala. 277; *Anderson v. Roberts,* 18 John. 513; 9 Amer. Dec. 235; Code 1886, § 1735, and cases cited.

2. The statute of frauds (13th and 27th of Eliz.) on this point is substantially embodied in section 1735 of our present Code, and has long prevailed as a statutory provision in this State, to say nothing of its being, as long ago asserted by both Lord Mansfield and Chief Justice Marshall, but affirmatory of the common law. It declares void all conveyances made with intent to hinder, delay or defraud creditors, *purchasers,* or other persons *who are* or may be so hindered, delayed or defrauded. *Carter v. Castleberry,* 5 Ala. 277; *Daugherty v. Jack,* 30 Amer. Dec. 335.

2. Subsequent creditors and subsequent *purchasers* are thus placed precisely on the same footing—equal protection being afforded to each. The 27th of Eliz. was made to embrace *purchasers* where the 13th of Eliz. only included *creditors.* Our statute includes both, as that of New York and other States also do. As to the New York statute, Spencer, C. J., said in *Anderson v. Roberts,* 9 Amer. Dec. 235, *supra:* "I can not perceive the least difference between a conveyance to defraud subsequent creditors, and a conveyance to defraud subsequent purchasers."—*Hood v. Fahnestock,* 34 Amer. Dec. 489. The past decisions of this court, I may add, bearing on this subject, as we shall see, appear fully to recognize this view.

4. Our decisions uniformly hold, also, that a mere *voluntary* conveyance, unaffected with actual fraud, is valid as to subsequent *creditors.* But, if actual fraud—*mala fides,* or fraud in *fact*—is shown, whether directed against existing or subsequent creditors, *either class* can successfully impeach and defeat such conveyance, so far as it may affect the right to the satisfaction of his lawful debts or demands as creditors of the fraudulent grantor.—*Seals v. Robinson,* 75 Ala. 364: *Stiles v. Lightfoot,* 26 Ala. 443; 3 Brick. Dig. 515, § 119. In other words, as clearly stated by Mr. Freeman, "such fraudulent conduct renders the transfer void *in toto,* except as to the parties; and of this invalidity a subsequent creditor may take advantage, as well as one whom the debtor intended to defraud."—*Jenkins v. Clement,* 14 Amer. Dec. 706–707, *note.*

Assuming these premises, we pass to other questions of greater difficulty.

The present rule in England undoubtedly is, that mere voluntary conveyances, although not affected with actual fraud, are absolutely and conclusively void under the statute of 27th Elizabeth, as against a subsequent purchaser for a valuable consideration, although he purchased with notice of the existence of such former voluntary conveyance.—*Elliott v. Horn*, 10 Ala. 348 : 44 Amer. Dec. 485. Or, as stated by Mr. Pomeroy (2 Eq. Jur. § 974), the English rule now recognized is, that the statute of Elizabeth "avoids all voluntary conveyances as against subsequent purchasers for a valuable consideration, even though such conveyances were made in good faith without any actual fraudulent intent, and though the subsequent purchasers for value had notice thereof." This rule, as he observes, has been accepted by a portion of the American decisions, but not the great current of American authority. Mr. Sugden, in his treatise on the law of Vendors (p. 474–5), asserts, that this has always been considered "a harsh interpretation" of the statute of Elizabeth, and "ought never to have been established." And such, indeed, seems to be the general current of opinion among both the English and American jurists and judges.

Mr. Pomeroy conceives the American rule, as supported by the current of authority, to limit the operation of the statute to prior voluntary conveyances made with *fraudulent intent*, and its protection to subsequent purchasers for a valuable consideration and *without notice*. The American doctrine he thus formulates : "Conveyances are not void under the statute, merely because they are *voluntary*, but because they are fraudulent; and the fraudulent intent may be inferred in the same manner, and under the same circumstances, as against subsequent creditors. A voluntary gift of property is valid as against subsequent purchasers and all other persons, *unless* it was fraudulent when executed; and a subsequent conveyance for value is evidence of fraud committed in the former voluntary conveyance, but not conclusive evidence. It results," he concludes, "that a voluntary gift made when the grantor is not indebted, in good faith, and without intent to defraud subsequent creditors, is valid as against a subsequent purchaser for a valuable consideration with notice."—2 Pom. Eq. Jur. § 974.

The English rule, holding, as we have said, a voluntary conveyance absolutely and conclusively void as against a subsequent purchaser, even with notice, was repudiated by the Supreme Court of the United States as far back as the case of

[Gilliland v. Fenn.]

*Cathcart v. Robinson*, 5 Pet. (U. S.) 265, decided in 1831. The court, through Chief Justice Marshall, announced the rule in that case to be, that one who purchases for value, without notice, from the grantor in a voluntary conveyance, gets a good title as against the prior donee; that such prior conveyance, or gift, was only *prima facie*, and not conclusively void, as against a subsequent purchaser; the subsequent sale itself furnishing only "a strong presumption of fraudulent intent," so as to cast the burden on the donee of proving the *bona fides* of such voluntary conveyance. In other words, the subsequent sale is carried back to the antecedent voluntary conveyance, so as to characterize its intent, and presumptively shows an intent to defraud such subsequent purchaser.—*Sterry v. Arden*, 7 Amer. Dec. 348. In the case above cited from 5th Peters, there was no evidence of an existing debt by the donor at the time he made the gift to his wife, nor other evidence of actual fraud. There were present only the badges of subsequent insolvency, the donor's continuing to claim the ownership of the property conveyed, and the facts of the subsequent conveyance itself. The doctrine of that case is expressly approved in *Corprew v. Arthur*, 15 Ala. 525.

The case under consideration is one of actual, and not of constructive fraud; the evidence, as we have said, strongly tending to show an express agreement for a secret trust, with no elements of a valid conveyance, except in naked form and semblance only. The inquiry is two-fold: (1) whether the word *purchaser*, as used in section 1735 of the Code, includes a purchaser by direct conveyance from the fraudulent grantor; and (2) how far *notice* to such subsequent purchaser, of the former conveyance, affects the validity of his title.

As to the first point, there is no difficulty, either as to the letter of the statute, or its generally accepted interpetation. Chancellor Kent says, it was, even in his day, the settled American doctrine, that a *bona fide* purchaser for a valuable consideration would be protected under the statutes of 13th and 27th Eliz., as adopted in this country, whether he purchased from a fraudulent grantor or a fraudulent grantee; and that there was no difference, in this respect, between a deed to defraud subsequent creditors, and one to defraud subsequent purchasers.—4 Kent's Com. 464. This, as we shall show, is the Alabama rule, and there is a vast array of weighty authority to support it.—*Howe v. Waysman*, 12 Mo. 169; 49 Amer. Dec. 126; *Anderson v. Roberts*, 18 Johns. 513; 9 Amer. Dec. 235; *Hood v. Fahnestock*, 8 Watts, 489; 34 Amer. Dec. 489; *Elliott v. Horn*, 10 Ala. 348; 44 Amer. Dec. 488; *Stokes v. Jones*, 21 Ala. 731.

[Gilliland v. Fenn.]

The chief conflict of authority arises where the purchaser from the fraudulent vendor is charged with *notice* of the prior fraudulent conveyance. Many authorities hold that, when he has such notice, he can claim no right which his immediate grantor would be estopped from asserting, and, therefore, that he will not be permitted to avoid the prior conveyance on the ground that it was intended to defraud subsequent purchasers or creditors. These decisions rest on the very reasonable ground, not only that the fraudulent grantor, having no title himself, can confer none, but that a contrary rule would lead to the injustice of enabling him, by collusion with a subsequent purchaser, to cheat the original grantee out of his estate. To this effect is *Foster v. Walton*, 5 Watts (Penn.) 478; *Fowler v. Stoneum*, 11 Tex. 473; 62 Amer. Dec. 490; *Moseley v. Moseley*, 15 N. Y. 334, and many other decisions. So there are many authorities to the contrary, holding that the word *purchaser* means purchaser with, as well as without notice, and when there is actual fraud in the conveyance, it is made void by force of the statute as against such purchasers for value.—*Lewis v. Love*, 2 B. Monroe, 345; 38 Amer. Dec. 161; *Jenkins v. Clements*, 14 Amer. Dec 708, note; *Craig v. Zimmerman*, 56 Amer. Rep. 466.

In this *status* of the law, it is proper that we should be governed by the rule to be deduced from the past decisions of this court, as the principle involves a rule of property of vast importance in its effect on titles. These decisions seem to me, on the whole, to clearly favor the view, that a conveyance infected with *actual fraud* may, under the statute, be avoided by a subsequent *bona fide* purchaser holding by deed from the grantor, although he have *notice* of the previous fraudulent conveyance.

As to purchasers at a sale under execution against a grantor who has made a fraudulent conveyance, the rule is clear and well established. The title thus acquired under legal proceedings instituted by a creditor is unquestionably good, although the purchaser may have had notice of the fraud; for his knowledge of the fraud likewise imports a knowledge that it was the precise thing that rendered the conveyance void as to creditors and purchasers. This principle runs from the very recent case of *Teague v. Martin*, 87 Ala. 500 (1888), back to *Reed v. Smith*, 14 Ala. 380 (1848), and even still further to *Carter v. Castleberry*, 5 Ala. (1843). It is recognized even in those jurisdictions which repudiate the rule that a fraudulent vendor can confer no title by his deed of conveyance made to a subsequent *bona fide* purchaser with notice of the prior fraudulent deed.—*Miller v. Koertge*,

70 Tex. 162; 8 Amer. St. Rep. 587. In *Carter v. Castleberry*, *supra*, however, the following language was used by Chief Justice Collier: "It is true that a fraudulent conveyance is binding on the grantor, but authorities are ample to show that it may be avoided by a subsequent *bona fide* purchaser, although he may have notice of the previous conveyance; [for] if he is informed of it, say the books, he knows that it is fraudulent, and of consequence void. And", he adds, "it is quite immaterial whether the subsequent purchaser acquire his title by a deed directly from the fraudulent grantor, or at a sale made under execution against him." That case involved a title to land acquired by purchase under execution, and the principle asserted was, therefore, not necessary to the decision of the case.

In *Eddins v. Wilson*, 1 Ala. 237, a father had made a fraudulent and voluntary deed to his son. He subsequently made a *fraudulent* conveyance, based on a valuable consideration, to another person. It was held that the first deed, though fraudulent, was good between the parties, and could not "be defeated by a subsequent vendee whose purchase was conceived in fraud"; for, it was added by COLLIER, C. J., if this were so, "it would only be necessary for him [the fraudulent grantor] to commit one act of fraud to defeat another." It was further said: "The law, however, is entirely different, if the second purchaser can show that the transfer under which he claims, was made for a *valuable consideration*, and in good faith." There is nothing here said about the effect of notice.

The case of *Elliott v. Horn*, 10 Ala. 348.; 44 Amer. Dec. 488, decided in 1846, is one in point, when critically considered as a construction of our statute of frauds, now embodied in section 1735 of the Code. That case clearly holds, that a subsequent purchaser for value from a fraudulent grantor obtains a title superior to that of the first grantee, although such subsequent purchaser had notice of the prior conveyance. There, a father had made a voluntary conveyance to his son, with intent to defraud creditors. The land, it is true, was entered by the father in the son's name, but this was considered immaterial (as was the same fact in *Howe v. Waysman*, 12 Mo. 169; 49 Amer. Dec. 126); the effect as to creditors, as was observed by ORMOND, J., being precisely the same as if the land had been entered in the name of the donor instead of the son, who was a minor. The father afterwards sold the land to one who was not a creditor at the time the land was entered, inducing his infant son to convey. The son, seeking to disaffirm his conveyance, afterwards brought an action for

the land. The court held that he could not maintain the action, on the ground that the purchaser from the father, although he acquired title subsequent to the original fraudulent conveyance, and with notice of it, was entitled to protection under the statute of frauds, which was admitted to embrace the substance of the 13th and 27th of Elizabeth. The minor son, in conveying, (it was said) had done only what a court of equity would have compelled him to do.

We can nowhere find any case in our reports which repudiates the construction of the statute announced in *Elliott v. Horn, supra.* On the contrary, the case of *Stokes v. Jones,* 18 Ala. 734, fully sustains it, and so does the same case as decided on the second appeal, and reported in 21 Ala. 731. A father there had made a fraudulent deed of gift to his children, and he afterwards conveyed the same property to a subsequent purchaser for value. The latter title was held to prevail in an action of ejectment, actual fraud in the conveyance being proved.

The case of *Corprew v. Arthur,* 15 Ala. 525, cited and relied on by appellee's counsel, so far from being repugnant to the foregoing cases, is corroborative of their authority. The same statute is there construed by Judge Collier as applicable to one purchasing for value from the donor in a voluntary conveyance, *not* infected with *actual fraud.* Adopting the view of the United States Supreme Court, as announced in *Cathcart v. Robinson,* 5 Pet. 264, *supra,* it was held, that one who purchases for valuable consideration, *with notice* that his vendor had made a previous *voluntary* conveyance, will not be preferred. It was decided that a subsequent mortgagee was a purchaser within the 27th Elizabeth, so as to avoid a prior voluntary conveyance under that statute, but it was added: "As a subsequent purchaser he can not claim the right to subject the land to the payment of his demand, without *showing* that the conveyance was *not only voluntary, but was intended to defraud creditors.*" The same principle is announced in *Gardner v. Boothe,* 31 Ala. 186, where it was decided that a subsequent purchaser for value of certain slaves, from a donor in a voluntary conveyance, although he bought without notice, acquired no title as against the donee. To invalidate the transfer as to a subsequent purchaser, it was held that proof of actual fraud was necessary.

The case of *Jefferson County Sav. Bank v. Eborn,* 84 Ala. 529, was one involving personal property, left in the hands of the grantor, and is governed by a principle somewhat different. But the subsequent purchaser was fully protected there, as against a prior fraudulent grantee.

[Gilliland v. Fenn.]

There is nothing in *Griffin v. Stoddard*, 12 Ala. 784, which is contradictory to these views, when the language of the court is construed with reference to facts of the case. The plaintiff in ejectment there claimed title under a recorded deed from one Oliver, the alleged fraudulent grantor. The defendants claimed title under two sheriff's deeds executed after the deed of the plaintiff, but based on judgments rendered on debts older than the fraudulent conveyance. It was held, that the plaintiff's title derived from the fraudulent grantor was subordinate to that derived under the execution sale.

We need pursue this part of the discussion no further. Whatever superior force may be accorded to the weighty reasons by which the contrary doctrine is so ably supported, our decisions commit us to the rule, that the purchaser for value from the grantor in a voluntary conveyance, *infected by actual fraud*, obtains a superior title as against a donee, although he purchased with *notice* of the conveyance. The whole reason of the case is simply this : The statute itself expressly declares fraudulent conveyances void as against subsequent purchasers and creditors alike. This implies *bona fide* purchasers for value, but it does not exclude purchasers with notice of the very fact which alone enables them to avoid the conveyance. Nor can a fraudulent grantee make any very just or conscionable complaint that he is deprived of the fruits of his iniquity, because it is done by the mandate of the law itself.

A distinction is made as to notice between the registration of a mere voluntary deed, unaffected by actual fraud, and a deed which is so infected. The former operates as notice, so as to bind a subsequent purchaser; but the latter does not, at least to the extent of barring the assertion of the purchaser's rights based on the fraud in the transaction. As stated in *Laird v. Scott*, 5 Heisk. 347, "After registration of a voluntary deed for land, a subsequent purchaser for value can not claim to be an innocent purchaser without notice. But, if the voluntary conveyance was intended to defraud a subsequent purchaser, the notice by registration will not affect his *right to attack* the voluntary conveyance for actual fraud. It follows, that a voluntary conveyance, made with the intent to defraud a subsequent purchaser for value, is void as against him, with or without registration, and with or without notice."—*Jenkins v. Clements*, 14 Amer. Dec. 708, note, and cases cited ; *Wyman v. Brown*, 50 Me. 148; *Lewis v. Love*, 38 Amer. Dec. 162; *Mason v. Baker*, 10 *Ib.* 724; *Lancaster v. Dolan*, 18 *Ib.* 625.

The plain reason of this distinction is, that the statute itself makes conveyances infected with actual fraud void as to subsequent purchasers for value, but it does not, according to the

[Gilliland v. Fenn.]

better view, embrace mere voluntary conveyances not actually fraudulent. Other conveyances are governed as to notice by the registration statutes.—Code 1886, §§ 1810; *et seq.;* and § 1735. It was long ago resolved, as far back as *Standen's Case*, 5 Co. 60, that a purchaser, notwithstanding he had notice of a fraudulent conveyance, might avoid it; for the notice of the purchaser can not make that good, which an act of Parliament has made void as to him.—Newland on Contracts, 396, 397. And, moreover, as said in *Myers v. Peck*, 2 Ala. 659, mere notice on the part of the purchaser of a fraudulent transfer will not prevent his avoiding it, "because, if he knew of the transaction, he knew it was void by law."

There is no force in the contention, that after Rhea had compromised his suit of ejectment with A. W. Sheppard, the alleged fraudulent grantor, and had re-conveyed to him the title to the land in controversy after its purchase at the sheriff's sale, that this title enured to the benefit of the fraudulent grantee by virtue of the covenant of warranty contained in that deed. It may be admitted that Rhea acquired the title by the sheriff's sale under his execution against the fraudulent grantor, the judgment debt being older than the fraudulent conveyance; and that his deed to A. W. Sheppard conveyed back to him the legal title to the land. But this title enured to the benefit of the subsequent purchaser, not of the fraudulent donee. This is expressly settled in *Stokes v. Jones*, 21 Ala. 731; s. c., 18 Ala. 734, where it is said: "The voluntary fraudulent estoppel [argued to have been created by the covenant of warranty contained in the deed], is as impotent to defeat the just claims of creditors, or *bona fide* purchasers for a valuable consideration, as the deed would be had it contained no covenant out of which the estoppel is supposed to arise. A party can not do by circuity and indirection what the law forbids to be directly done. He can not avoid the claims of creditors, or *bona fide* purchasers, by conveying with warranty to defraud them, and afterwards acquiring the title."

It is too clear for argument, that the payment of Rhea's debt by A. W. Sheppard did not purge his conveyance of fraud as to subsequent purchasers or creditors. If it was void for actual fraud, being a mere secret trust and a sham sale, the transaction at once lay open to the attack of either of these classes.

The existence of Rhea's debt was only a circumstance to prove fraud. Its payment was indemnity to him alone, and to no one else. It in no manner purged the fraud as a ground of attack on the title by others who were invested by law with this right. We are aware of no principle by which one who

[Howard v. Taylor.]

cheats two distinct persons can, by affording indemnity to the one, exempt himself from legal liability to the other. This precise point was made in *Stokes v. Jones*, 21 Ala. 731, but was passed by the court *sub silentio*, being obviously regarded as without merit.

These views result necessarily in the reversal of the judgment, many of the rulings of the court being repugnant to the principles which we have here announced.

The exceptions based on the rulings on the evidence, much of which is purely cumulative, may not arise on another trial, and we do not consider them. They have not, moreover, been deemed of sufficient importance to be discussed by counsel.

Reversed and remanded.